LUTHER V. COUNTS V. THE STATE.

No. 23296. Delivered April 3, 1946.
Rehearing Denied May 22, 1946.

The opinion states the case.

*Culwell & Culwell*, of Amarillo, for appellant.

*Ernest S. Goens*, State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

On the night of May 23, 1945, Harris (the injured party), nineteen years of age, went to a night club near Amarillo. Along about midnight he was standing outside the night club endeavoring to get a taxicab to town, when three young men who were strangers to him drove up and offered to take him to town. He accepted and got in the rear seat of the car. The three young men were riding in the front seat. Instead of going to town, the car was driven to the "Fairgrounds"; there the car was stopped—the driver reporting that it was out of gas. The three young men got out of the car and went around to the rear thereof. Harris followed. Then, he testified, "they knocked me down" by a blow on the cheek with a fist. There was then taken from his person a billfold containing three one-dollar bills. Immediately thereafter, the three parties left in the car, leaving him lying on the ground. Harris made his way to a nearby house, where he re-

ported the robbery to the officers and gave them a general description of the parties and the car in which they were riding.

Luther Counts and Virgil Watts were jointly indicted for that robbery. Upon a separate trial, Counts was convicted and his punishment assessed at five years' confinement in the penitentiary. From this conviction, he has appealed.

Upon the trial of the case, Harris was unable to identify his assailants. When Counts and Watts were pointed out to him in the court room, he was unable to say that either of them was the robber. Hence, about all that can be said of Harris' testimony is that it showed he was robbed at the time, place, and under the circumstances mentioned by parties whom he was unable to identify.

The State's case depends upon the testimony of the witness Garver.

Garver, fourteen years of age, testified that, on the occasion mentioned, he went to the night club with Counts and Watts in Count's car. As they drove up to the club, they saw Harris "waiting for a cab" and he inquired of them if they had seen one. Watts suggested that they would take him to town. Harris accepted, and got into the rear seat. Counts, Garver, and Watts occupied the front seat, with Counts driving. Instead of to town, the car was driven to the fairgrounds and stopped, Counts reporting that it was out of gas. On the way to the fairgrounds Garver said, "Watts nudged me, and winked, but I do not know what that meant." When the car stopped, Counts, Watts, and Garver got out and went around to the back thereof Harris followed. About that time, the car started to roll and Counts called to Garver to put the car in gear. Garver then went to the driver's side of the car, put the car in gear, and started back to the rear of the car when he met Counts, who said to him, "Let's go." Whereupon, he and Counts got into the front seat of the car from the driver's side, while Watts entered from the other, and drove away. Garver did not know where Harris was at that time, except that he was not in the car and did not leave with them. As to what happened and was said on the way to town, we quote from Garver's testimony:

"After we turned towards Amarillo on East Third Street, Blacky said he knocked the hell out of him. By Blacky, I mean Virgil Watts, and that was what he said. I do not remember

exactly whether he said anything about his purse, nor about this man, that I remember. I now state that Virgin Watts at that time did say that they knocked hell out of this man and got his purse, and after that statement was made, Blacky (Watts) took the money out of a pocket book and put it in his shirt pocket."

Later the same night, the three went to a cafe for sandwiches and soft drinks, which Watts paid for. Upon leaving the cafe, all three parties were arrested and carried to the police station and searched. Later, and on the next day, they were placed in jail. Garver was kept in jail for five days. He was never indicted for any offense connected with or growing out of the robbery. He denied any connection with or participation in the robbery, and said:

"The first I knew that Sammy Harris or anybody else had been knocked in the head out there and lost his purse was after we got in the car and the statement was made that they knocked hell out of him."

The search of the parties at the police station revealed no property belonging to Harris, or taken in the robbery.

Upon the facts stated, the conviction was predicated.

The appellant did not testify as a witness in his own behalf, nor did he offer any affirmative defensive testimony.

Under the facts stated, Garver was not an accomplice witness as a matter of law. The trial court did not err in so concluding. At most, the facts presented only an issue thereon for the jury's determination. This issue was pertinently submitted to the jury by the trial court.

Appellant's guilt before the jury was made to depend upon an application of the law of principals. After the statutory definition of that term, the effect of the trial court's instruction was that if appellant acted alone or with Garver and Watts, or either of them, as a principal in the commission of the robbery, he would be guilty.

There being no testimony other than that of the witness Garver showing appellant's guilty participation in the robbery, the jury's conclusion of necessity rested upon a finding by it

that Garver was not an accomplice witness and that appellant, either alone or with Watts, committed the robbery.

. The sufficiency of the evidence, then, must be tested in the light of such conclusion. ..

Ae we view the testimony, it is sufficient to warrant the jury's conclusion that:

(a) Harris was robbed by parties who picked him up at the night club; (b) Watts, Counts, and Garver were the parties who picked Harris up; (c) Watts and Counts were present and at the rear of the car when the robbery was committed; (d) immediately after the robbery, and while fleeing therefrom, Watts, in Counts' presence, said that they "knocked hell out of this man and got his purse"—at the time exhibiting the purse and the money; (e) Counts made no denial or challenge of this incriminatory statement connecting him with the robbery; (f) Counts gave a false reason for stopping the car; it was not out of gas; (g) the facts, as a whole, suggest a conspiracy between Watts and Counts to commit the robbery; and (h) Garver was not a party to the conspiracy, if one existed, and was not a party to or connected with the robbery.

The opinion is expressed that the facts are sufficient to support the conclusion that Watts and Counts acted together in the commission of the robbery.

Appellant relies upon James v. State, 144 Tex. Cr. R. 126, 161 S. W. (2d) 285, as sustaining his contention that the facts are insufficient to support the conviction. The insufficiency of the evidence to support James' conviction of the robbery there shown was because the evidence showed only that James was present when the robbery was committed, without active participation in the crime, or prior agreement to commit the same.

Watt's inculpatory statement that "they knocked hell out of this man and got his purse," viewed in connection with Garver's testimony, is sufficient to show that Watts and appellant acted together in the robbery, and renders the James case inapplicable here.

It must be remembered that where a statement or remark, which he understood and which called for a reply, is made in the defendant's presence, his silence or acquiescence may be

shown as a confession when he is not under arrest. Branch's P. C., sec. 64. Such rule appears to be applicable here.

By proper bills of exceptions, complaint is made of the recept in evidence of the testimony of Garver as to the statement by Watts that "they knocked hell out of him and *taken* his purse"—at the same time exhibiting the purse.

The objection to the testimony was that no conspiracy had been shown between the three parties or between Watts and appellant and was a declaration by Watts not binding upon the appellant.

The testimony was admissible as a part of the res gestae and to show that the parties were acting togeteher, as charged by the State. Moreover, a conspiracy is not necessary to be first established before evidence may be received of acts and declartion of co-conspirators. Sapp v. State, 87 Tex. Cr. R. 606, 223 S. W. 459-464; Whitehead v. State, 185 S. W. (2d) 725.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant has filed an extensive motion for a rehearing herein challenging practically all the conclusions, both of law and fact, set forth in our original opinion herein, and complains vigorously of the disposition of this cause.

In deference to such motion, we have again gone over the statement of facts and fail to find any mistaken reference thereto in the original opinion. Again have we read the transcript containing ten bills of exceptions, and we think the ruling of the careful trial court was correct in each instance. It would serve no useful purpose to again discuss the facts or the law applicable thereto. Suffice it to say, the trial court in a proper charge submitted pertinent facts to the jury for their consideration, and we remain convinced that the jury arrived at a proper solution of such facts.

Thus believing, the motion for a rehearing will be overruled.