**Alpheous Wayne HODGES, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 36851.**

Court of Criminal Appeals of Texas.

May 13, 1964.

On Rehearing June 27, 1964.

Rehearing Denied Oct. 28, 1964.

Ray Stevens, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, James C. Brough and Edward N. Shaw, Jr., Asst. Dist. Atty., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

The appellant and Clarence E. Gipson, Jr., were jointly indicted for robbery by assault, the indictment alleging that they took from Bessie Lou Nelson one hundred dollars in money and one ring.

Severance having been granted, the appellant was found guilty by a jury and assessed a term of seven years.

He appeals from such conviction and complains, in his brief, (1) that the court erred in not granting his motion for new trial because the evidence is insufficient to sustain the conviction; (2) that the court erred in his charge to the jury, and (3) that the court erred in refusing to allow the mother of Gipson to testify that she had advised him to obtain possession of the ring.

The prosecuting witness testified that on August 31, 1963, her name was Bessie Lou Nelson; that she had since married and her name was Bessie Lou Nelson Langston; that prior to August 31, 1963, she had been Clarence E. Gipson's prostitute for some four years but had left the house of prostitution where she last worked for him some four months before August 31, 1963; that on said date she saw the appellant and Gipson in a pool hall in Houston and Gipson asked her to go outside and she did.

The appellant was in his car and the motor was running when Gipson "grabbed and kicked" her into the car and got in beside her. Gipson began calling her "nasty names" and was beating her head on the dash board as the appellant backed out of the driveway.

After stopping for Gipson to make a phone call, the appellant drove to a wooded area near the Bayou. They were talking about where they could go and no one could hear her screaming.

They found such a place and stopped the car. Gipson got out and cut a limb off a tree and told the prosecuting witness to take her clothes off and she did. He had her get on her hands and knees on the ground and he cut her hair off. The appellant was there, at one time touching or holding her hands, but Gipson told him he did not need any help and he got back in the car and turned up the radio.

Gipson then took a diamond ring off her finger, had her lie on her back with her legs up in the air and whipped her with the limb he had cut.

In addition to losing her ring, $100 in money the prosecutrix had in her brassiere disappeared during her ordeal.

The prosecutrix also testified that Gipson stated that she was being beaten and robbed "because I ran away, and then I was supposed to talk to the Austin Sheriff's Department about other characters and dope."

She was finally driven back to the pool hall, Gipson telling her he wanted everybody to see how she looked. She testified that her hair was "about an inch long; some parts were longer but the crown was short and my body was black and blue."

She testified that she had been with the appellant and he wanted her to be his prostitute but she had "never hustled for him."

The prosecutrix admitted that she had told everybody she was Gipson's wife and had lived for a time with his mother who thought that she was married to her son, and that she had worked under the name Linda Gipson, but testified "we were never married."

Evidence was introduced showing that the prosecutrix had purchased a watch for $59.50 and the ring which cost $95.00 on credit while Gipson was in the penitentiary and she was living with his mother, and the jewelry store was holding Gipson's stepfather responsible for an unpaid balance of $85.85 as co-signer.

The prosecutrix testified that Gipson had the watch and that the ring belonged to her; that she had paid what she was supposed to pay and that she had been told that the balance would be paid by an unnamed person, "and if it's not, I can pay for it and I will."

She testified that when Gipson took the ring off her finger he said something to the effect "It is mine"—or "It belongs to me."

The evidence shows that the prosecuting witness called Frank L. Bates, Criminal Investigator with the Travis County Sheriff's Department, about 1 A.M. from Houston. He met her at the airport in Austin the next morning and took her to the the Sheriff's office. Bates described the condition of her body on September 2, 1963:

"A. The body was very badly bruised and scratched in back. It was bruised almost continuously from the waist down.

"Q. From the waist down to where?

"A. To the ankles.

"Q. From the waist down to her ankles?

"A. Yes, sir. In the back.

"Q. Did you notice anything about her arms?

"A. Yes, sir. There were bruises on her arms; bruises on her face, and lots of her hair was missing.

"Q. A lot of her hair missing?

"A. Yes, sir."

Gipson admitted to Joe Thorpe his participation in the robbery and took him to the ring and to the scene where the officer found the cut tree and loose hair which Gipson said had been cut off the head of the complaining witness.

The appellant offered in evidence the testimony of Officer L. E. Shipley to the effect that Gipson "represented that the defendant Hodges did not have any part of the offense except he drove the car."

Mrs. Guillory testified that at Christmas time her husband went with the prosecuting witness she thought was married to her son and they picked out a watch "and he made the mistake of co-signing with her"; that he went on board ship in January "and as soon as he shipped out she went down and added the ring to the same account," and that "my husband had to pay the watch out."

The trial court did not err in excluding testimony of Mrs. Guillory to the effect that she had been contacted by the Jewelry Store and had requested her son Clarence E. Gipson to return the ring to her so she could return it to the Jewelry Store. Such evidence constituted no defense to the taking of the ring by assault and by violence.

The court charged the jury on the law of principals, and instructed the jury that all persons are principals who are guilty of acting together in the commission of an offense regardless of the particular part performed by either or both. The jury was also instructed that any person who advises or agrees to the commission of an offense and who is present when the same is committed is a principal whether he aid or not in the illegal act, however mere presence of one where the act is being committed does not make him a principal.

Appellant's complaint to the omission of further instructions on the law of principals is not before us. Objections to the charge appearing in the transcript are not shown to have been offered before the charge was read to the jury, and the only exception to the court's order overruling the objections is the notation below the judge's signature.

The contention that the evidence is insufficient to sustain a finding that a robbery occurred is overruled.

The appellant's brief concedes that unquestionably he drove the car and was part of the plan to aid or abet in the whipping, but contends that nowhere in the testimony is there support for the robbery theory. We do not agree.

The appellant was present when the assault was made, the ring was taken and the money disappeared. He was present when Gipson stated the reason the prosecuting witness was "being beaten and *robbed*." He drove the prosecuting witness to the isolated place where she was assaulted and robbed, and back to the pool hall thereafter. The jury was warranted in concluding that he was not merely present but that he agreed to the commission of the offense and was a principal.

The judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING

McDONALD, Judge.

Appellant strenuously urges in his motion for rehearing that the facts are insufficient to support the verdict of the jury. We agree with appellant's contention.

While it is not our desire to restate the facts appearing in the original opinion, we do think it desirable to here state the salient facts which were not stated in the original opinion.

When asked upon cross examination, "I'm just saying this, that Junior Gipson, *when he took you away from Red's place, it was for the purpose of giving you a whipping?*", the prosecutrix responded: *"Yes."* The prosecutrix related that Gipson *"took my ring away before he whipped me"; "He took it off my finger"*. She further related that Gipson said: "It's mine", or "It belongs to me".

Upon re-direct examination the prosecutrix was asked: "That money that was taken from you, was that your money?", and she replied: *"I know I had it on me, and when I returned I did not have it with me"*. Then the prosecutor asked later: "And was that ring and money taken against your will?" and she replied: *"I guess the money was taken. I just said it was not with me when I returned."*

It is clear to us that the facts are deficient and do not sustain the jury's finding of appellant's guilt for the offense of robbery by assault. The only type of assault made prior to the taking of the ring was when Gipson "was beating her head on the dash board." The ring was first taken by Gipson and the beating followed. Viewing the evidence most favorably to the state, it is only by the wording of the leading questions elicited by it that anything like a favorable bit of testimony is adduced. The prosecutrix' testimony shows a mere taking of the ring off her finger, no giving up of the ring through fear. The testimony is totally lacking as to the one hundred dollars. All of the testimony in this respect shows that the prosecutrix had a hundred dollars, and then after the beating and after putting her clothes back on, she did not have it.

This case unquestionably presents a sordid story, but we are called upon to apply the law to the facts uninfluenced by ugliness. A reconsideration of the facts as dispassionate lawyers leads us to the inescapable conclusion that they do not show that this appellant took or participated in the taking of the ring or the money from the injured party by means of placing her in fear.

Accordingly, appellant's motion for rehearing is granted, judgment is reversed and the cause remanded.

WOODLEY, Presiding Judge (dissenting).

The views of the writer are set out in the original opinion affirming this conviction for robbery.

## ON STATE'S MOTION
## FOR REHEARING

MORRISON, Judge.

The State construes our opinion on motion for rehearing as holding that the offense of robbery may be committed only by placing the victims in fear. It was not our intention to so hold, though such is the normal case which reaches this Court. What we did hold was that this record, taken as a whole, does not show that appellant was a party to any agreement to rob prosecutrix or that he participated in the taking of her property or shared in a division thereof. She testified that appellant's co-defendant from whom she had gained her freedom had been her pimp and that the journey to the woods was for the purpose of punishing her for having done so. It is evident from her testimony that she was carried back to the pool hall so that all those there assembled might see her shorn locks and her bruised condition. It is clear to the writer that appellant participated in this form of chastisement simply by driving the automobile and nothing more. At one juncture in her testimony she stated that appellant did not take the ring from her, but was over by the automobile playing the radio and walking around. According to her, appellant's co-indictee's announced purpose upon leaving the pool hall was: "I am going to take you out in the country and give you what you have had coming for a long time." There was nothing in that statement to indicate that appellant knew that property was to be taken from her. This is fortified by Officer Shipley's examining trial testimony, admitted without objection, to the effect that appellant's co-indictee had stated to him that appellant took no part in the offense except to drive the automobile.

As Judge Hawkins so ably explained the law in Alaniz v. State, 147 Tex.Cr.R. 1, 177 S.W.2d 965, in the absence of a previous agreement or understanding to rob the injured party, participation in a fight with him would not make the accused guilty as a principal to the crime of robbery committed by his companion unless he knew that his companion intended to take the victim's personal property.

So viewing the facts, the State's motion for rehearing is overruled.

WOODLEY, Presiding Judge (dissenting).

The Court of Criminal Appeals or its judges are not the triers of facts and are not at liberty to substitute their findings for those of the jury. Only where the evidence, viewed in its strongest light from the standpoint of the state, fails to make guilt reasonably certain is the appellate court authorized to set aside a conviction for insufficiency of the evidence. Wright v. State, Tex.Cr.App., 364 S.W.2d 384, cert. denied, 375 U.S. 870, 84 S.Ct. 96, 11 L.Ed. 2d 96; Mason v. State, 108 Tex.Cr.R. 452, 1 S.W.2d 283; Franklin v. State, 147 Tex.Cr. R. 636, 183 S.W.2d 573.

All controverted defensive issues raised pass out of the case with the jury's verdict. Paris v. State, 157 Tex.Cr.R. 580, 249 S.W. 2d 217, cert. denied, 344 U.S. 857, 73 S.Ct. 92, 97 L.Ed. 665, reh. denied, 344 U.S. 888, 73 S.Ct. 183, 97 L.Ed. 687.

The evidence viewed in the light and manner required by the rules of law stated is sufficient to sustain the jury's verdict and it should not be set aside on the ground of insufficient evidence.

The appellant drove his co-principal Gipson and the prosecuting witness to an isolated site, where her cries could not be heard. On the way he saw Gipson strike her head against the dash. He was present and offered his assistance when she was forced to disrobe and her hair was cut off. He was present when Gipson forcibly took a ring off her finger and told her it did not belong to her, it belonged to him. He was nearby while Gipson was beating her with a tree limb after her ring was taken. A $100 bill which the prosecutrix had in her brassiere disappeared while the three were together.

The fact that the robbery was not the prime objective of the appellant and Gipson is not controlling. The taking of the ring by force with fraudulent intent was robbery. Whether the appellant had knowledge of the robbery which occurred in his presence and during the commission of the assault of which he and Gipson were equally guilty was for the jury. Blair v. State, 138 Tex.Cr.R. 247, 135 S.W.2d 715; Counts v. State, 149 Tex.Cr.R. 348, 194 S.W.2d 267. The jury has resolved the issues against the appellant.

When Gipson told the prosecuting witness, "in a medium voice," the reason she was "being robbed and why she was being beaten," the appellant was only "a good six feet away."

I respectfully dissent from the overruling of the State's Motion for Rehearing.