**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Cecil Eugene ANTHONY, Defendant-Appellant.**

**No. 72-2566**
**Summary Calendar.**[*]

United States Court of Appeals, Fifth Circuit.

Feb. 20, 1973.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

David Crosland, III, Atlanta, Ga., Court-appointed for defendant-appellant.

John W. Stokes, U. S. Atty., Robert L. Smith, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

PER CURIAM:

Cecil Eugene Anthony appeals his conviction of aiding and abetting unknown persons in stealing a Massey Ferguson farm tractor from an interstate shipment in violation of 18 U.S.C.A. § 659.[1] Appellant contends that the District Court erred (i) in admitting into evidence certain damaging statements uttered by the Appellant following his arrest and, assuming *arguendo* that the damaging statements were properly admitted into evidence, (ii) in failing to require sufficient corroboration of guilt. We find both of these contentions without merit and affirm the conviction.

The succession of events which culminated in this conviction began on August 7, 1971.

At 5:55 p. m. on that day Appellant went to a Gulf Service Station on Moreland Avenue in Atlanta and rented a Ryder U–Haul van. At about 7:00 or 7:30 the evening of August 7,[2] two men were observed cutting tie-down chains and removing a Massey Ferguson farm tractor from a railroad car at the Constitution yard of Southern Railway in Atlanta.

---

1. § 659. Interstate or foreign shipments by carrier; State prosecutions

Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any pipeline system, railroad car, wagon, motor-truck, or other vehicle, or from any tank or storage facility, station, station house, platform or depot or from any steamboat, vessel, or wharf, or from any aircraft, air terminal, airport, aircraft terminal or air navigation facility with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express or other property;

\*     \*     \*     \*     \*

Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both; but if the amount or value of such money, baggage, goods or chattels does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

2. At the trial two witnesses for the Appellant testified that he was in their company from approximately 6:30 p. m. until 11:30 p. m. Saturday night. Two other witnesses testified that Appellant had spent the remainder of that Saturday night with them from about 11:55 p. m. until the next morning. Appellant's wife testified that about 5:30 p. m. on the evening of August 7 she had spoken to the Appellant via long distance from Alabama where she was staying concerning his renting a truck for the purpose of moving her and her furniture back to Atlanta.

The two men then loaded the tractor into a Ryder U–Haul van and then began to depart. Two of the witnesses pursued the departing van in an automobile.[3] They saw another car joining up with the van. Upon stopping, three men emerged from the two vehicles and conversed.

The stolen farm tractor was discovered around noon on August 8 in the backyard of Walter T. Jones. Jones testified that the tractor had been left across the street from his house and he had first seen it there sometime around 11:00 p. m. Saturday night. He indicated that he had moved it from across the street to his backyard early Sunday morning.

At about 4:55 p. m. Sunday, August 8, Appellant returned to the Gulf Station on Moreland Avenue with the rented van where he was taken into custody by FBI and Railroad Security agents.[4] Arrest was made and it is undisputed that Appellant was correctly advised of his constitutional rights. It was at this point in time that the damaging statements (in the nature of exculpatory statements), whose admission into evidence the Appellant attacks, were made (see note 4, *supra*).

Appellant entered a timely objection to the government's proffer of testimony relating to his damaging statements uttered at the time of his arrest (see note 4, *supra*). At this time the trial Judge conducted a suppression hearing to determine the voluntariness of the statements. He ruled the statements admissible. At the conclusion of the government's case the Court overruled Appellant's motion for a judgment of acquittal.

In support of his first argument Appellant relies on the case of Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, its ancestors and its progeny. He contends that where

---

3. During their pursuit of the van these witnesses were able to record and testify to the registration and tag numbers of the van.

4. As to the subsequent events and dialogue FBI agent testified as follows:

Q. After placing him under arrest, can you tell the jury what, if anything, you did in advising him as to his constitutional rights?

A. I advised him he was not required to make a statement, any statement he did make could be used against him. He had a right to consult with an attorney before making any statement. If he could not afford an attorney, one would be appointed for him. If he decided to answer questions, he had a right to stop answering at any time and have him present during questioning.

Q. Did you understand he understood his rights?

A. He stated he wanted an attorney present.

Q. Then what did you do?

A. We didn't interview him at that time. He asked me then specifically what he was being charged with and at that time, I advised him he was being charged with theft of a farm tractor from the Southern Railway.

Q. Just one minute, back up a minute. Did you cease your questioning of him at this time when he said he wanted an attorney; is that correct, sir?

A. I did.

Q. Who instigated the next conversation?

A. He did.

Q. Are you sure of that?

A. Yes.

Q. Tell us how he did.

A. He asked me just what he was being charged with. I told him he was being charged with the theft of a farm tractor from the Southern Railway.

Q. What else happened?

A. At that point, he said he might steal an automobile or truck or something he could sell, but he certainly wouldn't steal a farm tractor. He didn't have any need for a farm tractor. He stated he rented a truck. At that point, I interrupted him to state anything he said could be used against him. He continued on after renting the truck, he turned it over to two individuals and that they had taken the truck and then they called him at four o'clock in the morning and told him where the truck could be found. He had just gotten the truck and returned it. I then asked him who the two individuals were and he stated that a good thief never rats on another thief.

Q. Did he state anything else?

A. I asked him if he considered himself a good thief, he said he did.

the right to counsel attaches, as it did here (see note 4, *supra*), any statement obtained in the absence of counsel must be suppressed, independent of any issue of the voluntariness of the statement. He further alleges that once there has been a request for an attorney or a refusal to waive rights has been made, a subsequent knowing and intelligent waiver is impossible.[5] Appellant contends that the trial court addressed their inquiry to the voluntariness of the statements but did not make a proper determination of waiver.

Of course *Miranda* places upon the government a heavy burden both with regard to inculpatory and exculpatory remarks "to demonstrate that the defendant knowingly and intelligently waived his * * * right to retained or appointed counsel." Miranda v. Arizona, *supra*, 384 U.S. at 475, 86 S.Ct. at 1628. But we disagree with Appellant's appraisal of the effect of the dialogue between him and the arresting officer at the time of the arrest. There is no evidence that the FBI agent persisted in the interrogation after Anthony invoked his right to counsel (see note 4, *supra*). Nor is there evidence that Anthony manifested inconsistent conduct because of confusion. See United States v. Hopkins, 5 Cir., 1970, 433 F.2d 1041. The Judge could conclude that Anthony himself initiated further conversation with the officer.

In *Hopkins, supra*, we held that if the accused initiates the conversation, his statements do not result from "interrogations" and are therefore admissible. Though there is no requirement that an accused be continually reminded of his rights once he has intelligently waived them, United States v. Phelps, 5 Cir., 1971, 443 F.2d 246, the record in this case shows that the FBI agent went the second mile by a second admonishment to Appellant. We conclude that the ensuing questions asked by the FBI agent were designed merely to pursue the line of inquiry begun by Appellant and uphold the trial Judge's ruling that Anthony waived his constitutional privilege. United States v. Hopkins, *supra*; United States v. Jacquillon, 5 Cir., 1972, 469 F.2d 380.

We find the remainder of Appellant's argument unpersuasive. The guilty verdict is adequately supported by the evidence. It is undisputed that Appellant departed with the van from the rental agency and subsequent to the commission of the crime returned with the van. The evidence is clear that the van was used in furtherance of the crime. Witnesses observed three men in active participation of the crime. While the evidence is not uncontradicted that Appellant was one of these three, the guilt of the Appellant may be established without proof that Appellant personally did every act constituting the offense charged. Aiding and abetting means to assist the perpetrator of the crime. United States v. Williams, 1951, 341 U.S. 58, 71 S.Ct. 595, 95 L.Ed. 747. To be an aider and abettor requires that a defendant "associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seeks by his action to make it succeed." United States v. Harris, 10 Cir., 1971, 441 F.2d 1333. Here, if he did nothing else, Appellant provided the truck necessary to transport the stolen tractor.

Affirmed.

---

5. We recognize and reaffirm the validity of our decisions, United States v. Phelps, 5 Cir., 1971, 443 F.2d 246; United States v. Blair, 5 Cir., 1972, 470 F.2d 331, which hold that once the suspect has requested an attorney that the *interrogation* must cease. But this in no way denigrates our holding today. For what we hold is that, on the facts of this case, the challenged statements were not the products of interrogation at all, but the voluntarily offered words of the Defendant.