GOVERNMENT OF the CANAL ZONE,
Plaintiff-Appellee,

v.

Sixto O'CALAGAN C. (Cerezo),
Defendant-Appellant.

No. 78–5169
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 14, 1978.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

James G. Derbes (ct.-appointed), Peter D. Derbes, New Orleans, La., for defendant-appellant.

Sixto O'Calagan C. (Cerezo), pro se.

Frank J. Violanti, U. S. Atty., William H. Beatty, Asst. U. S. Atty., Balboa, Canal Zone, for plaintiff-appellee.

Before BROWN, Chief Judge, COLEMAN, and VANCE, Circuit Judges.

COLEMAN, Circuit Judge.

Appellant, having waived a jury trial, was convicted by Judge Roettger[1] of aiding and abetting the possession of marijuana with intent to distribute. On March 7, 1978, he was sentenced by Judge Hill[2] to 3 years, 6 months of which he was to spend in a jail-type institution, with the other 30 months suspended. He also received a 3 year period of probation to commence on expiration of his term of imprisonment, plus 2 years special parole.

The government's chief witness was Robert Perrault, a friend of appellant's who worked with him at the Gatun Locks in the Canal Zone. Perrault lived in the Canal Zone. He testified that in July, 1977, while at his home, he received a call from appellant, asking him to meet him at the Locks to discuss marijuana, since appellant had some friends who were receiving a shipment from Colombia. At that meeting appellant informed Perrault that he would let him know when the shipment arrived, and that his friends wanted to know if Perrault could "handle" 600 pounds in one month's time. Perrault said that he could only handle 200 pounds in such a period. The first part of August Perrault received another call from appellant, asking him to meet him once more at the Locks. When Perrault did so, appellant told him that he had a friend in Palmas Bellas by the name of Leo who was receiving the shipment and he was the man they would be talking to. Palmas Bellas is in the Republic of Panama. Perrault and appellant drove to Palmas Bellas, discussed the impending arrival of the shipment with Leo, and argued about the price of the marijuana. On August 22, following the same pattern, appellant called Perrault and advised him that the marijuana had arrived. Perrault then met appellant at the Locks where the latter informed him that Leo wished to see him immediately. They arranged to meet Leo the following day at his house in Palmas Bellas. When they went over into Panama, to Palmas Bellas, they could not locate Leo, but purchased 40 pounds of marijuana from his brother, Moyo. Perrault put the marijuana in the trunk of his car, then took appellant back to

---

1. Judge of the United States District Court for the Southern District of Florida, sitting by designation.

2. Judge of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

his house in Escobal, Panama, and returned to his own home in the Canal Zone. On the drive back, Perrault and appellant discussed the 600-pound deal and arranged if everything went successfully Perrault was to pay appellant $10 a pound for each pound that Perrault sold, plus he was to give appellant his car. The next day Perrault saw appellant at the Locks in response to a call by the latter and was told that Leo was upset because they had not waited for him and had bought from Moyo instead. A meeting was arranged between Perrault, Leo, and the Colombian supplier at the Tarpaulin Club boat docks in the Canal Zone. At that meeting appellant was not present. A day or two later, following the same pattern, Perrault heard by phone from appellant, who informed him that the Colombian supplier needed money right away and had asked them to meet him out on Pina Road, in the Canal Zone. At that meeting on August 25, appellant was present, and Perrault purchased 50 pounds of marijuana, which Perrault took home and put with the other marijuana purchased from Moyo. On August 29, there was another call from appellant to Perrault, and Perrault again went to meet him at Gatun Locks, where appellant told him to meet Leo at Pina Road at 7:00 that evening. Perrault met Leo as arranged and purchased 200 to 250 pounds of marijuana, giving Leo $2,500 in cash, a rifle and shotgun. Appellant was not present at this sale. On September 5, appellant called again. Another meeting was set up for September 9, on a weekend, when Perrault, the Colombian supplier, Moyo, and another woman went to Perrault's home and negotiated for the purchase of 400 pounds of marijuana. They then went to Palmas Bellas, where Perrault was given this quantity, which he brought home and stored with the rest of the marijuana. At this point Perrault was arrested with 505 pounds in his house in the Canal Zone.

Following his arrest, Perrault decided to cooperate with the government. On November 19 he went with Sergeant Howard Marks, who was working undercover, to the Escobal area where appellant lived, trying to locate a marijuana plantation. They saw an individual named Rodolfo, who directed them to appellant. Arrangements were made with the latter to purchase 200 marijuana plants, some now, and some later, if the first deal went successfully. Perrault testified that appellant told Marks that if it wasn't for him the Colombian deal never would have gone down, that he had arranged for the whole thing and didn't get his money. This conversation was completely corroborated by Marks who testified that after arranging for the purchase of the 200 plants he asked appellant:

"Well, are you sure you can do this? Or is this just a lot of talk like Rodolfo and all the other farmers that we talked to?" He said, "If you don't believe me, ask Bob." He said, "I set the entire Colombian thing up. Had it not been for me the Colombian deal would have never gone down." And then he pointed to Perrault and said, "Isn't that true?" At which time Perrault said, "Yes, that is true."

I asked him then, I said, "Well, what did you get out of the Colombian deal?" He said, "I didn't get anything out of it." He said, "I did all that work, and I did all these introductions, and I did all these various things," and he went on to elaborate, "with witness Perrault." And he didn't get a thing out of it. He was quite upset about it.

At that time I told him, well, if this deal went down successfully, as the middle man I would then pay him $200.00, but only if we recovered the entire 200 plants. And this figure was agreed on between myself and the defendant.

Q. Did he say anything about specifically what he did between Perrault and the Colombian that you can recall?

A. Simply the fact that he had introduced witness Perrault to the Colombian. He advised him that the shipment was coming in. He had been with him on a couple of occasions when negotiations were taking place, or he had set up these negotiations. That's basically it to my knowledge.

On November 22, appellant was arrested and advised of his rights, at which time he admitted that he had made the introduction to the Colombian, that he had assisted Perrault in the negotiations and notifications, but denied that he had received any gain from it. Marks asked appellant if he would accompany them in a helicopter to assist in locating the marijuana farms. He agreed to do so, but later in the helicopter changed his mind, and made no further statements.

Appellant took the stand and denied any complicity other than the fact that he had introduced Perrault to Leo. He put on no other witnesses. The District Court found that the testimony of Perrault and Marks was the more credible and found the defendant guilty.

■ Appellant contends that his actions relating to aiding and abetting Perrault's possession of marijuana took place in the Republic of Panama, not the Canal Zone, hence the District Court had no jurisdiction. This is refuted by the record. In addition to initiating the negotiations in the Canal Zone, he took an active part in the meeting on or about August 25, 1977, at Pina Road in the Canal Zone, when Perrault purchased 50 pounds of contraband. Appellant had a $500 interest in this marijuana, since he had an agreement with Perrault that he would receive $10 for every pound sold. Thus he associated himself with the venture, participated in it as something he wished to bring about and sought by his action to make it succeed, *United States v. Anthony*, 5 Cir., 1973, 474 F.2d 770, and helped Perrault obtain possession in the Canal Zone.

■ Appellant contends that under 6 Canal Zone Code, § 42(a), the testimony of an accomplice must be corroborated by independent evidence which tends to connect the defendant with the offense committed, and Perrault's testimony was not sufficiently corroborated. However, there was strong independent corroboration in the testimony of Sergeant Marks, whom the District Court found to be a most credible witness, who testified in detail regarding appellant's admission of responsibility for the Colombian deal going down. In addition Marks testified that appellant admitted immediately after his arrest that he had assisted Perrault in the negotiations and notifications.

■ Since appellant's trial counsel failed to renew his earlier motion for judgment of acquittal, the sufficiency of the evidence is reviewable only to prevent manifest miscarriage of justice, *United States v. Juarez*, 5 Cir., 1978, 566 F.2d 511. There appears to be no such miscarriage here. Appellant contends that although the evidence might prove a conviction for aiding and abetting *distribution*, it does not prove his guilt of the offense with which he was charged—aiding and abetting *possession* with intent to distribute. He cites *United States v. Jackson*, 5 Cir., 1976, 526 F.2d 1236 in support of his argument. In *Jackson*, defendant introduced two sellers, who in turn made their own arrangements to sell cocaine to DEA agents. Reviewing the evidence, the Court found that although the accused was aware of the circumstances and intended that the illegal venture should succeed, he had not helped to obtain the drugs. He therefore could not be convicted of aiding and abetting possession. In contrast, appellant in this case was the contact between seller and buyer and thus participated more directly in obtaining marijuana. He participated in the negotiations, and was present on August 25, 1977, at Pina Road when the fifty pounds of marijuana was paid for, weighed and placed in Perrault's car. He had a financial interest in the marijuana, since Perrault promised to pay him $10 for each pound he sold plus an automobile. Accordingly, viewing the evidence in light most favorable to the government, there was ample evidence to establish his aiding and abetting possession of the marijuana with intent to distribute.

■ Appellant's fourth contention is that it was improper for the sentencing judge, who did not preside at the trial, to pass sentence on him. Under F.R.Cr.P. Rule 25(b) a judge other than the one who presided at trial may pass sentence when the trial judge is absent or otherwise incapable

of performing his duties, but if such other judge "is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial". The instant case was not a complicated one, Judge Hill had the benefit of the presentence report, appellant and his counsel had the opportunity to review it, appellant's counsel pointed out appellant's minor role in the crime, and appellant made no request that Judge Hill should recuse himself. Accordingly, there was no abuse of discretion.

■ Appellant's final point is that there was disparity in sentencing, since his sentence included a six month prison term, whereas Perrault received probation. However, in addition to his guilty plea, Perrault extensively cooperated with the government. Appellant's sentence was within the statutory maximum and hence is not reviewable on appeal unless the court is shown to have acted capriciously or arbitrarily so as to amount to a gross abuse of discretion, *United States v. Cumbie*, 5 Cir., 1978, 569 F.2d 273.

AFFIRMED.