**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert WEBB, Defendant–Appellant.**

No. 79–5390.

United States Court of Appeals,
Fifth Circuit.

Jan. 5, 1981.

Rehearing Denied Feb. 24, 1981.

---

Bruce H. Morris, Ronald L. Hilley, Atlanta, Ga., for defendant–appellant.

C. Michael Abbott, Asst. U. S. Atty., Atlanta, Ga., for plaintiff–appellee.

Before TUTTLE, VANCE and POLITZ, Circuit Judges.

VANCE, Circuit Judge:

Defendant was convicted in district court of kidnapping and using a firearm to commit a felony.[1] On appeal he contends the district court erred in admitting evidence seized at the time of his arrest, his confession and the confession of his accomplice.

At about midnight of September 2, 1978, defendant and an accomplice, Jess White, picked up the victim, her husband, and her three–year old child, who were hitchhiking on Interstate 285 near Atlanta. After the passengers had fallen asleep, defendant and White stopped the van and forced the victim's husband and child to get out at gunpoint. The two men then drove the van to defendant's barn where the victim was sexually assaulted. Eventually the victim was taken to Tennessee in defendant's car and let out on a country road. On February 19, 1979, White turned himself in to FBI authorities and gave a complete confession that inculpated the defendant.

An arrest warrant was obtained for Webb and at noon on February 21 three FBI agents and other local law enforcement officials went to his residence. Defendant was told that he was under arrest. He was advised of his rights and he acknowledged that he understood them. The FBI agent then asked defendant if he wanted to be told why he was being arrested. Defendant responded: "Yes, I want you to tell me what I'm charged with and then I'm going to call my lawyer." In response, the agent informed defendant that White had confessed to the kidnapping and had implicated Webb. There was no phone on the premises, so defendant had no opportunity to call his lawyer. He never again mentioned speaking to an attorney and was not questioned further. The agent told defendant that White had told the FBI that a revolver used in the kidnapping would be in the glove compartment of defendant's car and that a license plate would be in the barn. The agent indicated that he would like defendant's permission to search for the gun and the license plate. Defendant was advised of his right to refuse consent to the search and was also told that if he refused the agent could apply for a search warrant, but that it would not automatically be granted. Defendant agreed to the search and executed two consent forms stating that he voluntarily permitted the searches. He then affirmatively assisted the agents in finding the revolver and the tag. They did not handcuff Webb until they began to drive to the FBI office.

During the ride, the agent took some personal information from Webb but did not inquire about the crime. Then they rode in silence for a few moments. Webb sniffled as though on the verge of tears and spontaneously exclaimed, "I've ruined my whole life." He then said, "Jess [White] had an attack of conscience, huh?" Webb told the agent that if he had heard the story from White he might not have received a correct version. The agent told

---

1. In violation of 18 U.S.C. §§ 2, 924(c)(1) and 1201.

him that he could talk about it if he wanted, but that he could say as much or as little as he wished. He gave *Miranda*[2] warnings again and Webb signed the warning form. Webb then gave a full, detailed confession.

At the hearing on defendant's motion to suppress the gun, the license plate and his confession, the magistrate considered testimony indicating that at the time he executed the consent to the search, defendant had just awakened and was surrounded by a number of armed officers. He had a moderate alcohol dependency, but there was no evidence that defendant was under the influence of alcohol or drugs at the time. The magistrate found that the defendant had knowingly and voluntarily consented to the search. The magistrate concluded also that Webb's confession in the car was not the product of interrogation and was voluntarily given. The district court adopted the magistrate's report as the opinion and order of the court.

### I.

■ Webb challenges the admission of his confession on the ground that he had invoked his right to counsel at his house. Interrogation must cease when an individual unequivocally asks for an attorney. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Nash v. Estelle*, 597 F.2d 513 (5th Cir.) (en banc), *cert. denied*, 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979).

■■ A defendant's demand for counsel does not bar voluntary statements if he "spontaneously incriminates himself after questioning has ceased." *Nash v. Estelle*, 597 F.2d at 517. When presented with Webb's statement that he wished to hear the charges against him before speaking with his lawyer, the FBI agent acted appropriately. All questioning ceased immediately. His statement that White had confessed to the kidnapping came in answer to Webb's question concerning the charges against him. Webb's confession occurred in a conversation which he initiated and fol-

lowed a knowing and intelligent waiver of his rights. *See United States v. Cavallino*, 498 F.2d 1200, 1202 (5th Cir. 1974); *United States v. Anthony*, 474 F.2d 770, 773 (5th Cir. 1973).

While we are concerned that a suspect's request for counsel should result in an immediate end to all forms of interrogation, we believe that the information provided by the FBI agent was responsive to Webb's question and not an attempt to prolong interrogation. The magistrate correctly found that there had been no violation of Webb's *Miranda* rights.

### II.

■ Webb challenges the search of the automobile and the barn, and the admission of the revolver and the license plate on the ground that his consent was involuntary. We first note that the totality of the circumstances clearly supports the finding that Webb's consent was voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). Webb affirmatively helped the officers find the pistol and license tag. He was not intoxicated, was not handcuffed, and was not threatened with the shotgun. *See United States v. Savage*, 459 F.2d 60 (5th Cir. 1972) (consent not involuntary merely because of presence of armed officers).

■ Webb argues that a per se rule, similar to that applicable when fifth amendment rights are involved, should invalidate a suspect's consent to search when he has previously expressed a clear desire to consult with counsel. We need not decide this issue, however, because we believe that the admission of the gun and license plate into evidence was in any case "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Included in the considerable evidence presented to the jury in this case was testimony as to Webb's detailed confession, a positive in—court identification of the defendant by the victim's husband and identification by the victim of

---

**2.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

defendant's car and of his barn as the scene of the sexual assault. The evidence of the gun and the license plate established no vital link but merely added to the overwhelming evidence before the court.

### III.

Webb alleges that the limited admission of his accomplice White's confession was prejudicial and violated his right to confront adverse witnesses. In reading White's confession, the prosecutor substituted "his accomplice" for "Webb" and eliminated all references to specific places.

█ We find no prejudice. Webb attempted to cast doubt upon the accuracy of his confession by attempting to show that he had inserted himself into White's crime because of a tendency to fabricate stories and because of his idolization of White. The only realistic way for the prosecution to rebut such evidence was to show that Webb's confession did not simply repeat and personalize White's account.

We also find no violation of confrontation rights under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), the Supreme Court held that in the face of overwhelming independent evidence of guilt, a violation of *Bruton* was harmless beyond a reasonable doubt. *Id.* at 254, 89 S.Ct. at 1728. Similarly, this court has held that when the guilt of an accused is established beyond a reasonable doubt by his own confession, a violation of *Bruton* constitutes harmless error. *Mack v. Maggio*, 538 F.2d 1129, 1130 (5th Cir. 1976). *See Parker v. Randolph*, 442 U.S. 62, 75, 99 S.Ct. 2132, 2140, 60 L.Ed.2d 713 (1979) (plurality opinion) (admission of interlocking confessions with proper limiting instructions conforms to the requirements of the sixth and fourteenth amendments). In view of the overwhelming evidence of Webb's guilt, any error was harmless.

AFFIRMED.

TUTTLE, Circuit Judge, dissenting:

With deference, I dissent. In *Nash v. Estelle*, 597 F.2d 513 (5th Cir. 1979), this Court sat en banc, and, with the precision that necessarily follows when the majority opinion is met by a carefully reasoned dissent, spelled out limits to which peace officers might go in interviewing an arrested suspect after he has requested a lawyer. The legal discussion in that case commenced:

> *United States v. Priest*, 409 F.2d 491, 493 (5th Cir. 1969), held:
>
> > Where there is a request for an attorney prior to any questioning, as in this case, a finding of knowing and intelligent waiver of the right to an attorney is impossible.... [T]he suspect has an absolute right to delay interrogation by requesting counsel. If such a request is disregarded and the questioning proceeds, any statement taken thereafter cannot be a result of waiver but must be presumed a product of compulsion, subtle or otherwise.
>
> We construe *Priest* to bar inquiry as to waiver when, prior to any questioning, the suspect makes an unequivocal request for an attorney's presence, as was done in *Priest*, and when the request is disregarded and the questioning proceeds. *See United States v. Massey*, 550 F.2d 300 (5th Cir. 1977).

597 F.2d at 517. This Court then announced a rule limiting the application of *Priest* to cases in which the accused's request for an attorney is "unequivocal." The Court said:

> Where the suspect's desires [for an attorney] are expressed in such an equivocal fashion, it is permissible for the questioning official to make further inquiry *to clarify the suspect's wishes.* [Emphasis added.]

*Nash v. Estelle, supra*, at 517. Thereafter, the Court said:

> This is not to say that an interrogating officer may utilize the guise of clarification as subterfuge for coercion or intimidation.... The critical factor is whether a review of the whole event discloses

that the interviewing agent has *impinged on the exercise of the suspect's continuing option to cut off the interview.* [Emphasis added.]

*Id.* at 518 (citing *Michigan v. Mosley*, 423 U.S. 96 at 103, 96 S.Ct. 321 at 326, 46 L.Ed.2d 313). The *Mosley* Court had said:

Through the exercise of his option to terminate questioning he can control the time at which questioning occurs, the *subjects discussed*, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. [Emphasis added.]

My concern with the opinion of the majority, and it is a deep concern, is that the Court here permits "the interview" to continue where no one could reasonably contend that the request for counsel was equivocal. Moreover, the "interview" here was not designed to "clarify the suspect's wishes" regarding his request for counsel. It thus violates the carefully crafted rule laid down by the en banc court in *Nash*.

I repeat the undisputed facts briefly. Webb was told that he was under arrest. He was advised of his rights and he acknowledged that he understood them. The FBI agent then asked Webb if he wanted to be told why he was being arrested. Defendant responded: "Yes, I want you to tell me what I'm charged with and then I'm going to call my lawyer." The 'agent then told defendant, as stated in the government's brief, "that White (his accomplice) had advised the FBI that a .38 revolver used in the kidnapping would be in the glove compartment of the GMC Sprint owned by Webb" and that White had said that a Tennessee license plate belonging to the van used in the kidnapping was in Webb's barn. The government's brief does not disclose that the agent ever answered Webb's question of "what I'm charged with." The agent then requested defendant's permission to search for the gun and the license plate. Defendant was advised of his right to refuse consent to the search and was also told that if he refused the

agent could apply for a search warrant, but it would not automatically be granted. Defendant agreed to the search and executed two consent forms stating that he voluntarily permitted the searches. He then affirmatively assisted the agents in finding the revolver and the tag. They then placed him in an automobile and began to drive to the FBI office. During the drive Webb referred to White's confession as related to him by the agent after Webb had stated that he wanted to call his lawyer. He then told the FBI agent, as stated in the majority opinion, "that if he had heard the story from White he might not have received a correct version." He was again given the *Miranda* warnings, signed a warning form and gave a full confession.

The crime for which Webb was convicted is an atrocious, ugly crime against helpless victims. This circumstance makes it difficult for any reviewing court to view dispassionately the claim of a confessed participant that his confession had been obtained by unconstitutional means. The great difficulty here is that unless we do view it in that manner, we recognize that the next appellant who makes the same contention in this Court may be completely innocent of the offense. We must recognize that the constitutional underpinning which this Court recognized in *Nash* is for the protection of the innocent even though it may be claimed in a particular case by an accused who appears on the record to be guilty.

As I have stated above, the right of the agent to "continue the *interview*" at all after a request is made depends upon whether the request was equivocal. The majority opinion does not find this request to have been equivocal. In fact, it obviously could not. Instead, it changes the option outlined in the en banc *Nash* opinion from an "option to cut off the interview" to an option to cut off "interrogation." This, it seems to me, is in conflict with the Supreme Court's language in *Michigan v. Mosley, supra,* where at 423 U.S. 103, at 96 S.Ct. 326, the Court said "through the exercise of his option to terminate questioning he can control the time at which questioning oc-

curs, the *subjects discussed,* and the duration of the interrogation." (Emphasis added.)

The majority arrives at this result by the statement: "We believe that the information provided by the FBI agent was responsive to Webb's question and not an attempt to prolong interrogation." I am satisfied that the majority's reasoning is·faulty, because the agent impermissibly continued the interview and conducted it in a manner that, whether designed or not by the agent, would inevitably persuade Webb that he might as well confess. The agent had been asked "to tell me what I'm charged with." Instead of that, the agent then told defendant that White had confessed the kidnapping and told the FBI that a revolver used in the kidnapping would be in the glove compartment of [Webb's] car and that a license plate would be in the barn. This unsolicited comment was then followed immediately by the agent's request to search for the revolver and the license plate.

Moreover, even if we are to assume that the request was equivocal, then under *Nash* the only further interviewing that is permissible is "to clarify the suspect's wishes [as to his desire for counsel], *Nash v. Estelle, supra,* at 517.

If the FBI agent had responded by telling Webb that he was being arrested for the federal crime of kidnapping, accompanied by assault, and had then stated that no telephone was available, and had followed this up by asking Webb again if he was certain that he wanted to call his lawyer before talking any further, this interview would meet the standards of *Nash* if we are to assume that Webb's original mention of counsel was equivocal. Instead of following that course, the agent told him that White had confessed and had implicated him and placed two of the incriminating objects in Webb's possession. The United States recognizes the effect which the agent's communication of this information to Webb had on the latter when it states in its brief here: "He did not 'blurt out' his confession, but rationally, deliberately and intentionally decided to volunteer a state-ment *in order to set the record straight,* believing *in his own mind* that his co–defendant may have blamed him [Webb] for the kidnapping." [Second emphasis in original.] Clearly, the statement made by the FBI agent to Webb that his accomplice had confessed and implicated him so intimately with the crime was the motivating cause for Webb's confession. There can be no other explanation for Webb's change of attitude toward the agents. Since that statement was made after Webb had clearly stated that he wanted to consult his lawyer, I do not see how this Court can hold otherwise than that it violated the standards set down in *Nash* because it "discloses that the interviewing agent has impinged on the exercise of the suspect's continuing option to cut off the interview." *Nash, supra.* Here, Webb's request for counsel was not respected by the agent as an exercise of his option to cut off the interview. The interview continued by the agent's furnishing Webb with what, it seems to me, would be the most impelling reason for Webb's agreeing to open up and confess with the hope that he might counteract the worst of what White may have told the agent about his participation.

I think it is clear that Webb's confession here was not the result of his own rational processes, but was the direct result of the agent's telling him that the one person who knew the most about the crime had made a full confession implicating him in it. That information was communicated to Webb after a clear request for counsel. It seems to me that we have opened up the way to permit an agent to make a very persuasive *argument to an accused person to confess* after he has made an unequivocal request for counsel, so long as he does not actually *interrogate* the accused as to his participation in the crime.

The agent's motive in "interviewing" Webb is irrelevant. It is not necessary for us to find that the agent here utilized "the guise of clarification as subterfuge for coercion or intimidation" if we find the existence of the "critical factor" that the "interviewing agent has impinged on the exercise

of the suspect's continuing option to cut off the interview." Here, the interview continued beyond the request for counsel in a manner contrary to that permitted by the principle announced in *Nash*. That conclusion alone requires suppression of the confession.

What I have said with respect to the confession is equally applicable to the consent given by Webb for the search for the revolver and the license plate. Immediately following the agent's telling Webb that White had confessed and implicated him, he then proceeded to ask Webb if he would consent to a search of the premises. This, it is to be remembered, is after Webb had stated: "I want to call my lawyer." I think any consent given by Webb after that would be subject to the same constitutional infirmities as was his confession.

I would reverse the judgment of conviction and remand for a new trial.