**UNITED STATES, Appellee,**

v.

**Private First Class Clarence M. RAY, SSN 427–04–6642, United States Army, Appellant.**

**CM 440903.**

U. S. Army Court of Military Review.

12 March 1982.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, and Captain Joseph A. Russelburg, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, Major John T. Meixell, JAGC, and Captain Robert D. Higginbotham, JAGC, were on the pleadings for appellee.

Before FULTON, McKAY and COHEN, Appellate Military Judges.

## OPINION OF THE COURT

McKAY, Judge:

Charged with attempted rape, in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880 (1976), the appellant pleaded not guilty and was found not guilty, but guilty of the lesser included offense of indecent assault, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1976). He was sentenced by the military judge, sitting as a general court-martial, to a bad-conduct discharge, confinement for nine months, forfeiture of all pay and allowances, and reduction in grade to Private E–1. The convening authority approved the sentence.

The appellant has assigned two errors which he contends occurred at his trial to his prejudice. First, that the military judge erred by admitting his incriminating statement made to a Criminal Investigation Command (CID) agent after appellant had declined to discuss the offense for which he was a suspect and had requested a lawyer. Second, that the evidence is not sufficient to sustain the findings of guilty.

On the evening of 3 March 1981, after receiving a report from Mrs. Mary N that the appellant attempted to rape her and that he was still present at the scene, the appellant was apprehended by military police, while asleep in his car, at Fort Polk, Louisiana. The appellant was taken to the CID office where Special Agent Franklin advised him of his right to counsel and right to remain silent. At that time he declined to waive his right to remain silent and requested counsel. The appellant and Agent Franklin remained in the interview room for a few minutes while, according to her testimony, Agent Franklin was getting her papers together. She looked up to see appellant shaking his head and he told her, that "he didn't want his company commander to find out [about the incident] because he was already in trouble." Agent Franklin replied that she had to advise the commander as part of the normal procedure, and that she would advise him of the information she had; i.e., the victim's statement and where they found appellant. She also told the appellant that as he had asserted his right to see a lawyer she would not talk to him until he saw the lawyer. The appellant then explained that he had

misunderstood her explanation of his rights; what he really wanted to do was give her "his story" and then talk to a lawyer.*

A second agent was called in and appellant again represented that he had misunderstood his rights initially and wanted a lawyer only after he gave "his story" to Franklin. The appellant was again advised of his right to remain silent and to counsel. He indicated he understood and wanted to waive these rights and give his side of the story. He then gave the contested incriminating statement. At his trial this statement was admitted over his objection.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that the constitutional prohibition against compelled self-incrimination required that custodial interrogation be preceded by advice to the putative defendant of his right to remain silent and his right to the presence of an attorney. These principles apply to military custodial interrogations of criminal suspects. *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

The appellant contends that his right to the presence of an attorney was denied him by Agent Franklin's "gratuitous comment" on the one-sidedness of the information she would report to appellant's commander; that her intended purpose was obviously to induce him to waive his rights and make a statement. To support his position appellant directs our attention to *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64

L.Ed.2d 297 (1980), wherein the United States Supreme Court concluded:

... that ... the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say the term interrogation made under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect. (footnotes omitted). 446 U.S. at 300–301, 100 S.Ct. at 1685.

and to *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In *Edwards* the Supreme Court held that:

... an accused having expressed his desire to deal with the police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

■■■ The issue raised by this assignment of error is whether Agent Franklin's actions constituted an interrogation within the meaning of *Innis*. We hold that it did not. The record is devoid of any indication that Agent Franklin's conduct was calculated to elicit an incriminating response from appellant. To the contrary her conduct was merely routine CID procedure. After giving the appellant the required advice and receiving his refusal to waive his rights, she

---

* On direct examination Agent Franklin testified—

After [he requested to talk to a lawyer]—well he sat there for a few minutes as I was getting my papers together and he told me that he didn't want his company commander to know about this. I told him that I was going to have to advise his company commander ... because—well that's normal procedure ... I told him that I was going to advise him of what information I had: the victim's statement and where we found him and what the victim had said. And I told him that I had no way of telling his company commander what part he played in it. He told me that he wanted to give me a story. I told him that because he had told me that he wanted a lawyer, I have to let him go and

talk to one. He said that he misunderstood me to begin with. He said he wanted a lawyer. However, he wanted a lawyer after he gave me his story.

On cross-examination she stated—

I was messing with my paperwork and I kind of looked up and he was shaking his head and he said that he didn't want his company commander to find out because he was already in trouble. I said, 'Well, I'm going to have to advise your company commander of what occurred here this morning because the lady indicated that something happened.' And I told him that all I had to go to his company commander was her statement and that's when he told me that he wanted to give me his side of the story.

was putting her case papers together in order to terminate the session with him and turn him over to his commander. She looked up to see him shaking his head and before she said anything appellant stated his hopes that she would not tell his company commander of the events of the evening. Her reply that she had to notify the commander as it was "normal procedure," was nothing more than a polite and informative response to appellant's hopeful inquiry. It was not an attempt to prolong her interrogation, *see United States v. Webb*, 633 F.2d 1140 (5th Cir. 1981), or a ploy which was reasonably likely to evoke an incriminating response from him. Accordingly, the exchange was not an interrogation, or its functional equivalent. To the contrary, we find that Agent Franklin's conduct demonstrates that she sought scrupulously to honor appellant's "right to cut off questioning" as mandated by the Supreme Court. *See Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). *See also United States v. Hill*, 5 M.J. 114 (CMA 1978). Not only did appellant initiate the exchange, but considering the facts and circumstances of his apprehension at the crime scene by military police, the subsequent interrogation that was terminated, appellant's expressed anxiety, the second advisement of rights, and the persistent statements of appellant that he wanted to give his story and then talk to a lawyer, we find he made a knowing and intelligent abandonment of his right to remain silent and to have the presence of an attorney. *See Edwards v. Arizona, supra*, 451 U.S. at 489, 101 S.Ct. at 1887 (Powell, J., concurring in result). The resulting inculpatory statement was therefore correctly admitted into evidence by the military judge.

We find no merit to appellant's second assigned error. The evidence establishes beyond reasonable doubt that after an evening of drinking beer and driving around with Mrs. N, the appellant parked his car on a desolate dirt road at Fort Polk and with the intent to gratify his sexual desires, he indecently assaulted her by fondling her breasts and vulva area without her consent and against her will.

The findings of guilty and the sentence are affirmed.

Senior Judge FULTON and Judge COHEN concur.