[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 3, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-10814
Non-Argument Calendar

_____

D. C. Docket No. 04-00398-CR-VEH-PWG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN G. GRANT, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(January 3, 2008)**

Before BIRCH, MARCUS  and WILSON, Circuit Judges.

PER CURIAM:

John Grant, Jr. appeals his 24-month sentence, imposed upon re-sentencing

after a jury found him guilty of aiding and abetting false statements, in violation of 18 U.S.C. §§ 1014 and 2. On appeal, Grant argues that the district court failed to make an independent finding of the amount of loss, which was necessary to calculate his guidelines sentencing range correctly, and erred in failing to conduct an evidentiary hearing. Grant also argues that the district judge abused her discretion in presiding over the re-sentencing proceedings because she had not presided at trial or conducted an evidentiary hearing. Finally, Grant argues that he was denied his Sixth Amendment right to effective assistance of counsel during re-sentencing in that his counsel specifically requested that the district court not conduct an evidentiary hearing. We AFFIRM Grant's sentence.

## I. BACKGROUND

Grant was indicted on charges of aiding and abetting false statements under 18 U.S.C. §§ 1014 and 2 ("Counts 1-6"), aiding and abetting bank fraud under 18 U.S.C. §§ 1344 and 2 ("Count 7"), and conspiracy to defraud the United States under 18 U.S.C. § 371 ("Count 8"). A jury found him guilty of Counts 1-6 and not guilty of Count 8.[1] The jury also found, beyond a reasonable doubt, that Grant's offenses caused Covenant Bank to lose $350,000.

---

[1]Count 7 was dismissed upon the government's motion.

Grant was the President of Southern Pride Contractors, Inc. ("SPC"), which had a $500,000 line of credit with Covenant Bank in Leeds, Alabama. SPC could draw on the line of credit up to 80% of the value of its accounts receivable. From the fall of 2002 through May 2003, SPC was bidding on a large U.S. military contract. During this time, at Grant's direction, an SPC employee, Michael Crisp, provided Covenant Bank with false accounts receivable reports, apparently in an attempt to increase SPC's credit line in anticipation of the military contract. Based on the false statements, Covenant Bank kept the $500,000 line of credit open, although SPC's accounts receivable were insufficient to support it. If Covenant Bank had known the actual amount of accounts receivable, it could have called the loan and taken funds from SPC's checking account to reduce the bank's loss.

Relying on Covenant Bank's "Declaration of Victim Losses," an exhibit in the related case against Crisp, the probation office calculated Covenant Bank's loss as $481,945.38 plus legal fees of $2,192.00, interest, and late fees, for a total of $497,158.87.[2] This would have yielded a total amount of restitution of $484,137.38 (if restitution of interest and late fees was not authorized by statute).

Grant was assigned a base offense level of six pursuant to U.S.S.G. § 2B1.1(a)(2003). The Guidelines then called for the addition of 14 levels for a loss

---

[2]This declaration was not an exhibit in Grant's trial and is not part of the record.

amount between $400,000 and $1,000,000 and the further addition of two levels for obstruction of justice. § 2B1.1(b)(1)(H); U.S.S.G. § 3C1.1. This resulted in a total offense level of 22, which, with a criminal history category of I, gave Grant a guideline imprisonment range of 41-51 months. The probation officer noted that, pursuant to 18 U.S.C. § 1014, the maximum statutory term of imprisonment was 30 years per count.

Before sentencing, Grant objected to, among other things, the amount of loss alleged in the presentence investigation report ("PSI"). The government responded that, although the jury had found a loss of $350,000 beyond a reasonable doubt, the government intended to establish a greater amount at sentencing by a preponderance of the evidence.

The original sentencing judge, who had also presided at trial, found, without explanation, that Covenant Bank's loss was $50,000 and sentenced Grant to five months in prison on each count, to be served concurrently. R9 at 18, 38-39. Grant appealed his conviction and sentence, and the government cross-appealed. We affirmed Grant's convictions, but vacated his sentence and remanded to the district court for re-sentencing. In so doing, we held that the district court had "failed to provide any factual basis whatsoever for its ultimate loss calculation of $50,000," and thus erred in calculating the amount of loss. R1-62 at 19-20. We also

4

observed that the district court had erred in calculating the guidelines range because the amount of loss was an "essential component" in the calculation under U.S.S.G. § 2B1.1. Id. at 20.

After the original sentencing judge recused himself, Grant filed a motion requesting that his conviction be set aside, or that he be granted a new trial, on the bases (1) that the amount of loss, an essential factor in determining a sentence, had not been and could not be proved, and that allowing the government to prove the amount at re-sentencing would be effectively retrying the case; and, 2) that a judge other than the trial judge could not fairly determine a sentence. At re-sentencing, the successor judge stated that she had read the trial transcripts and exhibits, the PSI, the sentencing transcript, and the objections to the PSI. The court then heard arguments on Grant's motion.

Grant argued that it was prejudicial to him to be sentenced by a judge who had not been present to observe the witnesses' demeanor at trial and to assess their credibility. Grant also objected to "the government being allowed to have another bite at the apple in trying to prove that there was a loss to the bank." R10 at 5. Grant argued that it was "in the nature of double jeopardy" to allow the government to present additional evidence of the amount of loss because the government did not carry its burden to prove the amount at the original sentencing

5

hearing and should not be allowed another opportunity. Id. at 6. The government argued for an evidentiary hearing, particularly pointing out that it had been surprised by the original sentencing judge's loss determination because (1) the PSI had indicated a loss amount of "well over $400,000," and (2) Grant's objection to that amount had suggested the loss amount ought to have been between $200,000 and $400,000. Id. at 15. Grant argued, however, that we had asked the district court "to form a rational basis about what the loss was" based on the evidence contained in the transcripts from the trial and the original sentencing hearing. Id. at 17.

After discussing several reported cases addressing the propriety of a non-trial judge presiding at re-sentencing, the court found that no issue in Grant's case was particularly dependent upon the demeanor of the witnesses. The court noted that although one witness had pled guilty to making false statements, "the evidence was consistent and accepted by the jury from several witnesses." Id. at 21. The court then denied Grant's motion to set aside his conviction or for a new trial, and stated:

> And I find that in this specific case, with this specific record, and these specific allegations, and based on my review of every document that exists about the case, other than pretrial motions, I can adequately and fairly sentence this defendant because I am familiar enough with the case to be able to assign an appropriate sentence from that review.

6

Id. at 22. The court granted Grant's request not to hear additional evidence as to the amount of loss, stating that it would "proceed on the basis of the trial transcript, the exhibits, the previous sentencing hearing, the presentence report, and the objections to the presentence report, and anything that I hear in allocution today." Id. at 23.

The district court found that there was "sufficient evidence to support the jury's determination of a $350,000 loss." Id. at 24. The court discussed in detail the trial testimony regarding the loss amount, observing that there was "overwhelming evidence" that SPC had true accounts receivable of between $300,000 and $400,000 at the time that the loan balance was $496,000 and at the time that the false statements were made to the bank. Id. at 26. The court found the loss amount to be $350,000 on the bases of the jury's verdict, the sentencing transcript, and the trial transcript. This yielded a new guidelines offense level of 20, resulting in a sentencing range of 33-41 months.

The court then heard arguments from the parties on whether the court should vary from the Guidelines. Grant requested a variance based on the bank's own participation in the scheme, his poor health, his Marine Corps service, his years of contracting with the federal government without any trouble, and his inability to pay restitution if he were to receive a long sentence. The court also heard from

7

Grant personally. The government responded that the testimony at trial had shown that Grant had prepared the false statements for his own benefit.

With reference to the 18 U.S.C. § 3553(a) factors, the court stated that it considered the nature and circumstances of the offense, Grant's history and characteristics, the need to deter Grant and others from committing similar offenses, the need to avoid unwarranted sentence disparities, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. The court then sentenced Grant to 24 months on each count, to be served concurrently. Neither party stated further objections to the findings, the calculations, the sentence, or the manner in which the sentence was pronounced. However, this appeal followed.

## II. DISCUSSION

A. <u>Independent Finding of the Loss Amount</u>

We review a final sentence imposed by the district court for reasonableness. <u>United States v. Booker</u>, 543 U.S. 220, 261, 125 S. Ct. 738, 765-66 (2005). After <u>Booker</u>, district courts must first correctly calculate the advisory sentencing range under the Guidelines, and then must determine a reasonable sentence in light of the factors listed in 18 U.S.C. § 3553(a). <u>United States v. Talley</u>, 431 F.3d 784, 786 (11th Cir. 2005) (per curiam). The standards of review for application of the

Guidelines remain the same as before <u>Booker</u>: we review the district court's factual findings for clear error and review the application of the Guidelines to those findings <u>de novo</u>. <u>United States v. Massey</u>, 443 F.3d 814, 818 (11th Cir. 2006). "When the appealing party does not clearly state the grounds for an objection in the district court, we are limited to reviewing for plain error." <u>Id.</u> For plain error, we must find: (1) error, (2) that is plain, and (3) that affects substantial rights. Id. Then, we may correct such an error "only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." <u>Id.</u>

Rule 32(i)(3)(B) of the Federal Rules of Criminal Procedure provides that, at sentencing, the court "must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). In economic offense cases, the district court must properly calculate the amount of loss in order correctly to calculate the guidelines range. U.S.S.G. § 2B1.1(b); <u>see</u> <u>United States v. Hamaker</u>, 455 F.3d 1316, 1336 (11th Cir. 2006). "[T]he sentencing Guidelines require a district court, at the sentencing stage, to make <u>independent</u> findings establishing the factual basis for its Guidelines calculations." <u>Hamaker</u>, 455 F.3d at 1338 (citing Fed. R. Crim. P. 32(i)(3)(B) while reviewing a

9

district court's reliance on the jury's forfeiture verdict in calculating the loss amount for purposes of the Guidelines). "The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the [presentence investigation report], or evidence presented during the sentencing hearing." Id. (quotation omitted).

"Usually, the government must prove disputed facts at sentencing by a preponderance of the evidence." United States v. Malol, 476 F.3d 1283, 1292 (11th Cir. 2007). However, if the evidence in the record amply supports the amount of loss as determined by a jury beyond a reasonable doubt, a sentencing court may use such amount in calculating the guidelines range. Id. at 1293.

Here, the record shows that the district court determined the loss amount based on the jury verdict and a thorough review of both trial and sentencing transcripts. Upon this review, the district court specifically found that there was "sufficient evidence to support the jury's determination" of the loss amount. R10 at 24. Thus, the district court stated a factual basis for its independent determination of the loss amount for purposes of calculating the guidelines range, in accordance with our direction following Grant's previous appeal. See United States v. Grant, 211 Fed.Appx. 889, 898 (11th Cir. 2006) (per curiam); see also Hamaker, 455 F.3d at 1338; Malol, 476 F.3d at 1293. Therefore, the district court

did not commit error, much less plain error, in determining the amount of loss.  See

Massey, 443 F.3d at 818.[3]

B. Decision to Preside Over Re-sentencing

We review a district court judge's decision to preside over re-sentencing for

abuse of discretion.  See, e.g., Government of the Canal Zone v. O'Calagan, 580

F.2d 161, 166 (5th Cir. 1978); see also United States v. Dowd, 451 F.3d 1244,

1256 (11th Cir.), cert. denied, 127 S. Ct. 335 (2006).  Rule 25(b) of the Federal

Rules of Criminal Procedure provides:

> (1) In General.  After a verdict or finding of guilty, any judge
> regularly sitting in or assigned to a court may complete the court's
> duties if the judge who presided at trial cannot perform those duties
> because of absence, death, sickness, or other disability.
>
> (2) Granting a New Trial.  The successor judge may grant a new trial
> if satisfied that:
> > (A) a judge other than the one who presided at the trial
> > cannot perform the post-trial duties; or
> > (B) a new trial is necessary for some other reason.

Fed. R. Crim. P. 25(b).  We have declined to hold that a judge who was not present

at trial must read the trial transcript before imposing a sentence, where the record

contained "ample evidence that [the sentencing judge] was familiar enough with

---

[3]If a party invites error, we are "precluded from reviewing that error on appeal."  United
States v. Harris, 443 F.3d 822, 823-24 (11th Cir. 2006).  Accordingly, we do not review Grant's
claim that the district court should have conducted an evidentiary hearing because any error in
this regard was invited by Grant's motion that no additional evidence be heard at re-sentencing.

11

the trial to impose sentence." United States v. Caraza, 843 F.2d 432, 437 (11th Cir. 1988) (per curiam). We have also held that a sentencing judge was "sufficiently familiar with [the defendant's] trial to sentence him," where the sentencing judge had ruled on pretrial motions, read the trial transcripts, and read the transcripts of all later proceedings. Dowd, 451 F.3d at 1256.

In this case, the record shows that the re-sentencing judge determined that she was able to sentence Grant fairly based on her review of the trial transcript, exhibits, jury verdict, and sentencing transcript. The sentencing judge also found that there was nothing in the case that depended particularly on the demeanor of the witnesses. Thus, there was "ample evidence" that the sentencing judge was familiar enough with the case to impose a sentence. See Caraza, 843 F.2d at 437. Accordingly, it was not an abuse of discretion for the district court judge to preside at re-sentencing when she had not presided over the trial or the original sentencing hearing.

C. Ineffective Assistance of Counsel

On appeal Grant argues that he is preserving his claim of ineffective assistance of counsel, but that the record is not sufficiently developed for us to review his claim on direct appeal. The government argues that the record is sufficient to find that Grant received effective assistance of counsel with regard to

12

counsel's request that the district court not conduct an evidentiary hearing on the amount of loss.

"Whether a criminal defendant's trial counsel was ineffective is a mixed question of law and fact, subject to de novo review." United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002) (quotation omitted). However, we generally do not consider claims of ineffective assistance of counsel raised for the first time on direct appeal, except in rare cases in which the record is sufficiently developed as to that issue. Id.; see Massaro v. United States, 538 U.S. 500, 504-05, 508, 123 S. Ct. 1690, 1694, 1696 (2003). In this case, we conclude that the record is adequate to enable review of the limited issue Grant raises, i.e., whether counsel was ineffective in that he argued against hearing additional evidence at re-sentencing on the amount of loss.

"To prevail on a claim of ineffective assistance of counsel, [a defendant] must prove: (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that he was thereby prejudiced, that is, there is a reasonable probability that but for counsel's deficient performance, the result of his trial would have been different." United States v. Greer, 440 F.3d 1267, 1272 (11th Cir. 2006); see also Strickland v. Washington, 466 U.S. 668, 686-87, 104 S. Ct. 2052, 2064 (1984).

Based on the jury's determination of the loss amount, the applicable Guidelines, the presentence investigation report, and the government's lower burden of proof at sentencing, a reasonable attorney could have concluded that further evidence on the amount of loss would be more likely to result in a higher guidelines imprisonment range. See Malol, 476 F.3d at 1292. Thus, counsel's request not to hear additional evidence was not "below an objective standard of reasonableness." See Greer, 440 F.3d at 1272. Accordingly, Grant's claim of ineffective assistance of counsel fails.

### III. CONCLUSION

Grant appeals his 24-month sentence for aiding and abetting false statements, in violation of 18 U.S.C. §§ 1014 and 2. Upon review of the record, and upon consideration of the briefs of the parties, we discern no reversible error with regard to the district court's finding of the amount of loss or the district judge's decision to preside at the re-sentencing hearing. Finally, because a reasonable attorney could have concluded that an additional evidentiary hearing at sentencing might not have been in the best interests of his client, we find that Grant's counsel was not ineffective. Accordingly, we **AFFIRM** Grant's sentence.