## BUSTER JAMES V. THE STATE.

No. 21945. Delivered March 18, 1942.
Rehearing Denied April 29, 1942.

The opinion states the case.

GRAVES, Judge, dissenting.

*W. W. Ballard*, of Wichita Falls, for appellant.

*Spurgeon E. Bell*, State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was charged by indictment with the offense of robbery by making an assault upon and fraudulently taking from the person and possession of Hy Locklar seven dollars in money and a watch of the value of sixty dollars. His punishment was assessed at five years in the penitentiary.

The statement of facts in the case is rather brief and shows that Locklar went into a beer stand in the edge of the city of Wichita Falls on Saturday night, April 12, 1941, and, seeing a young man standing there wearing a soldier's uniform, invited him to have a drink of beer, which he did. They then got into Locklar's car and drove to another place and then on the streets of the City of Wichita Falls. Locklar chose his own course and was at no time directed by the soldier in the place he went. While they were on Eighth Street the soldier discovered another party and said to Locklar, "Wait a minute, there's a friend of mine." Locklar stopped and let the party in the car. The soldier was on the front seat with Locklar and the other party got in the rear seat. Locklar said, "I saw the other boy when he got in the car. I didn't get a good look so that I could identify him again." He drove on looking for a place to park. Soon the soldier asked Locklar to let him drive the car. This Locklar declined to do and the soldier hit him on the head, knocking him unconscious. The next thing the witness knew he was in Dallas in a hospital minus the seven dollars which he had in his pocket and also a twenty-three jewel Elgin watch. He later recovered the watch from a pawn shop in the City of Dallas, but there is no evidence about the recovery of the money or any part of it. He said that while the appellant had the general appearance of the person he picked up, "I could not say that was the man. I will not attempt to say for sure this was the man." He also stated that the party from the back seat talked to the soldier boy, but that the witness paid no attention to what he was saying. He was driving on a crowded street and didn't look around. What he heard didn't make any impression on the witness, and "they did not have an opportunity to get together and frame up anything." He further stated that what they were saying didn't affect him (Locklar). They never whispered or anything like that. There was nothing suspicious about their conduct. Neither the soldier nor appellant had anything to do with the witness driving up Eighth Street. They were in the business district in the main part of town when the blow was struck and it was the

second blow that knocked him unconscious. He was positive that the soldier hit the first blow, but he does not say who hit the second.

Early Sunday morning before daybreak appellant was seen driving Locklar's car with a soldier boy in the front seat and a man in a bloody condition tied in position in the rear seat. A young man at the service station discovered this condition and took the number of the car, reporting it to the officers. He identified appellant as the party driving the car. A patrolman saw Locklar at a street crossing about five o'clock in the morning in a bloody condition and took charge of him, carrying him to the emergency hospital. Some time during Sunday morning the police of the City of Dallas found the car in question wrecked and apparently abandoned. Appellant had blood on his shirt at this time. This fact we regard as a suspicious circumstance, but by no means sufficient to support a finding that he was present when the crime was committed and that he took a part in it.

The evidence does not disclose where appellant was arrested, whether or not he had any money, and there is no evidence connecting him with the sale of the watch to the pawn broker. It appears that the circumstances of the case exclude the possibility that the robbery could have been the result of previous plans between Stockwell and appellant. The only possible connection which the evidence may show that appellant had with the crime was his driving the car which belonged to Locklar and the strong probability that Locklar lay wounded and unconscious in the car at the time. The question then is: Do the circumstances, considered together, sufficiently connect appellant with the offense of taking the money and the watch?

The testimony of Locklar excludes any connection which appellant may have had with the offense prior to the time he was knocked unconscious by the second blow. He is not shown to have had any connection with the money or the watch at any time. The court charges properly the law of principals, but we are unable to find the facts in evidence supporting the jury's finding on such charge. It may be that the evidence would have supported the finding by the jury had it not been for the testimony excluding any previous plan and also any participation in the assault made upon Locklar.

It is our conclusion that the evidence is insufficient to support the jury's verdict finding the appellant guilty of the offense charged in the indictment.

The judgment of the trial court is reversed and the cause remanded.

GRAVES, Judge (dissenting).

This cause has been reversed because of what my Brethern think was the insufficiency of the evidence. I am not in accord with such a conclusion.

The recital of the facts are correctly set forth in the opinion, with the following addenda: Early in the morning of the day that Mr. Locklar lost his property, about 3 or 4 o'clock, a policeman of the City of Wichita Falls saw appellant and the soldier, John Hunter Stockwell, in each other's company in Wichita Falls, the city in which the assault was alleged to have taken place. Again, the filling station operator, L. E. Taylor, at about 2:30 in the morning, was at work in the filling station in Dallas, which was located on a road from Wichita Falls to Dallas, and he noticed an automobile, which later was shown to be Locklar's, was stopped out a short distance from such filling station, and such car remained stationary there for about five minutes, after which time appellant drove up to the filling station in a car that was afterwards identified as Locklar's, and asked Taylor for a cigarette and a match, which Taylor gave him; he then asked Taylor how was business and received the answer "fair," and sat there a minute longer and said "I'll be seeing you" and drove off. There was another man in the car with appellant dressed in soldier's clothes. When this pair first drove up to the filling station Taylor happened to look in the back seat of their car and there saw a man sitting on the floor of the car with his hands tied and blood on him, with his head on the back seat of the car. When the soldier observed Taylor looking at the man in the back of the car he punched appellant and appellant drove off. Taylor also said:

"I just noticed blood on this man here and it was a white shirt he had on. I saw spots of blood on his white shirt. It was before I saw the man tied up in the back of the car that I noticed the blood spots on his white shirt, it was when they first drove up and I walked up to the side of the car that I noticed it. * * * This blood I saw on him wasn't on him over

there (meaning in jail). I don't think there was blood on him over there, but in Dallas when I saw him, it was along here on his shoulders. It looked like it had been thrown on there with his fingers but there wasn't a big smear. There was some blood down here on his arms. I believe there was some down on his sleeves. I don't think I could see but one hand and it was on the left side. I think there was some on there, I wouldn't be for sure; it was right along there. It looked like somebody did that (indicating). I suppose it was red, that is the color of blood. It was real bright red; the blood on the man's shirt front was real bright red."

This witness also identified the soldier. It was also shown that the car in which they were riding, appellant driving, was Locklar's car.

It was also shown that Mr. Locklar, when found the next morning in Dallas by the policeman, Mr. Tranthem, was in the following condition, according to the witness:

"Mr. Locklar's head was bloody all over and terribly swollen. And his eyes as far as I could tell were closed from the results of swelling. You couldn't see the color of his face at all as to whether he might have been a white man or a negro. All you could tell was he was a mass of blood all over from the top of his head to below his waiste. A mess is the only way to describe it. A large portion of the blood had dried. He was in a bad shape. And we took him to the emergency room, turned him over to the first aid. I watched the doctor treat him. Mr. Locklar was undressed by the orderly at the hospital. He was in such a mess the nurse started to undress him and the orderly came in about then and the doctor ordered him to undress him because the man's tie and shirt and coat were a gob of dirt and some of the blood was still sticky, and the other had dried up and this negro orderly undressed him there for the doctors and nurses."

Another policeman, Mr. Bullock, testified, relative to the Locklar automobile, the same one identified by number by the filling station operator:

"The left front fender and the left running board and the bumper were damaged, and I believe there was some damage to one of the doors. The fender was crushed and the running board at the center, and the front bumper looked as though it had had a lick, it was pushed in through the grill. The back

seat was very bloody, that is the upholstery, and down in the bottom on the mat. The front seat and all the glasses were spattered with blood and there was blood on the steering gear and on the cowl, and blood all over it. The glasses were spattered with blood and that blood had all dried, but some of it wasn't exactly dry. We put the car in the city pound. I know that the car later was turned over to Mr. Locklar. My records show he signed for it. There was blood down in the bottom of the car on the floor and in the back seat too, and the front and back window glass."

Appellant was charged in the indictment with making an assault upon Hy Locklar, and, by means of such assault, taking from Locklar the sum of seven dollars in money and a 23-jewel Elgin watch. The money was never found, although the watch was located in a pawn shop in Dallas.

It will probably be admitted that if appellant had been charged with the theft of the automobile, his unexplained possession of the same, having been recently stolen, would have been sufficient to authorize his conviction for its theft; but the State's failure to show him in the possession of the stolen money and watch is claimed to militate so strongly against the State that this cause should be reversed on account of an insufficiency of the evidence.

It is to be noted that the careful trial court gave an instruction on circumstantial evidence.

I therefore think the following legal proposition is of prime importance herein:

"The jury may infer the stealing of the whole from the possession of a part." Branch's Criminal Law, Sec. 794, citing Hill v. State, 41 Texas, 256; Jack v. State, 20 App. 656; Rose v. State, 52 Texas Crim. Rep. 155, 106 S. W. 143; White v. State, 17 Texas App. 188; Gonzales v. State, 18 Texas App. 453.

Although it has been held improper for the court to so charge the jury, such being upon the weight of the evidence.

In the Rose case, supra, a case of theft, the owner of a pair of pants left his trousers, wherein was his pocketbook, at a place where accused was working; the pocketbook, which contained $5.00 in money and a drink check on a saloon, was taken by some one out of such trousers; the accused was later

identified as the man who had utilized such drink check at the saloon soon after the theft, although the money was never found. Judge Davidson, in disposing of such matter, said:

"Appellant moved in arrest of judgment, the contention being that at most the drink check alone was found and traced into his possession; and this being insufficiently described in the indictment, would not authorize the conviction of appellant for the theft of the money, or his conviction at all. For the purposes of this case, if it be conceded that the drink check was insufficiently described (see Patrick v. State, 50 Texas Crim. Rep. 469; 98 S. W. Rep. 840; and Wade v. State, 35 Texas Crim. Rep. 170; 32 S. W. 772), yet, if appellant was found in possession of the check, and this was shown without its even being alleged in the indictment, it might be sufficient to establish, under the circumstances in this record, that appellant had taken the pocketbook and all of its contents, and there is no question that the money was sufficiently described. If the drink check was traced to appellant's possession immediately after its loss, it would be very clear and cogent evidence of the fact that he took the pocketbook and all of its contents, for the check was in the pocketbook. There can be no question here that, if appelland stole the drink check, he stole the pocketbook and all of its contents."

It is also contended herein that under the facts as set forth herein appellant was a principal and came under the denunciation set forth in the latter part of Art. 67, P. C., which reads as follows:

"All persons who shall engage in procuring aid, arms or means of any kind to assist in the commission of an offense, while others are executing the unlawful act, *and all persons who endeavor at the time of the commission of the offense to secure the safety or concealment of the offenders are principals.*"

The proof unquestionably shows appellant in possession of and driving the car of Locklar, with a man dressed in soldier clothes sitting by him, in the early morning of the night the offense was committed, some few hours after such commission, and after their flight from the scene of such offense some hundred miles away, the appellant driving the car, thus attempting to secure the safety of the person whom the majority opinion says was the original and only offender.

The writer is of the opinion that taking into consideration the surrounding circumstances, the jury had a right to infer that appellant was present at the time the assault was made upon Mr. Locklar, and that he was a principal in the robbery when Locklar lost his money, his watch and his car, and which car was later seen in appellant's possession. I think the presence of blood upon appellant was a strong circumstance to show that he was present when the car was spattered with Locklar's blood, and Locklar was robbed; and that sufficient testimony being present to show his participation in the car theft, the jury had the right to infer that he was also present and interested in the further robbery of the money and watch.

I think this cause should be affirmed, and I therefore respectively dissent from the views expressed by my Brethren.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The State's motion is predicated on the legal proposition that the unexplained possession of property recently stolen will support a conviction for the theft thereof, and that if accused is found in possession of a part of the stolen property the jury may infer therefrom that he stole all of it. The proposition is so firmly fixed as correct that a citation of authorities is unnecessary. But recognition of such proposition as the law by no means relieves the State of difficulty under the facts here present.

If the taking of Mr. Locklar's property was the only element necessary in a robbery charge then the control and management of his car by appellant would support the conclusion that appellant also took or participated in the taking of Locklar's money and watch, but to be guilty of robbery as charged appellant must have participated as a principal in the assault and violence upon Locklar followed by the taking of his property.

All persons who act together in the commission of an offense are principals. Art. 65 P. C. Likewise, when an offense is committed by one person, but another is present, and *knowing the unlawful intent*, aids by acts or encourages by words or gestures, the one who commits the unlawful act, the person so aiding or encouraging is also a principal. Art. 66 P. C. Also, any person who advises or agrees to the commission of an

offense and who is present when the same is committed is a principal whether or not he aids in the illegal act. Art. 69 P. C.

The fact is undisputed that appellant was present when his companion, the soldier, assaulted Mr. Locklar, and rendered him unconscious. The facts are not sufficient to support the conclusions that he had advised or agreed with the soldier that they would assault and rob Mr. Locklar or any other person. "Mere presence, in the absence of proof of having agreed to commit the offense, will not constitute one a principal." Sec. 681, Branch's Ann. Tex. P. C., and authorities thereunder. Mr. Locklar's own evidence acquits appellant of any act done or word said that would support the inference that appellant knew of the unlawful intent of the soldier to assault him (Locklar), or which encouraged the soldier or in any way aided him in said assault.

If an assault be committed but no property taken, the one guilty of the violence could be prosecuted for an assault, but not for robbery. Clemmons v. State, 161 S. W. 973. Turn the proposition around by the following illustration. B, intending to rob A assaults him and renders him unconscious; C is approaching and sees the assault but is unaware of B's intention; B becomes alarmed at C's approach and flees; C takes advantage of A's unconscious condition, rifles his pockets and appropriates his money and watch. Certainly C would be guilty of some offense but not of robbery because he did not participate as a principal in the assault and violence upon A which produced the condition which made it possible for C to get possession of A's property.

The mere presence of appellant when the soldier struck Mr. Locklar and rendered him unconscious in the absence of previous agreement to rob him, in the absence of aid or encouragement to the soldier in his act of violence, in the absence of knowledge on appellant's part of the soldier's intent, would not render appellant guilty of robbery, however reprehensible his conduct may have been in subsequently taking or participating in the taking of Mr. Locklar's property.

The case presents an anomaly in that if Mr. Locklar had not survived and testified on the trial the inference from the other facts would have supported the conviction of appellant for

participation in the robbery, but Mr. Locklar's own evidence refutes the inferences upon which appellant's guilt would rest.

The State's motion for rehearing is overruled.