Vernon VIRGILIO, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 90–209.

Supreme Court of Wyoming.

June 4, 1992.

Leonard D. Munker, State Public Defender; Gerald M. Gallivan, Defender Aid Program; and Timothy F. Marion, Student In-

tern, for appellant. Argument presented by Leonard D. Marion.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Karen A. Byrne, Senior Asst. Atty. Gen., Jennifer Gimbel, Senior Asst. Atty. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, and Wilhelm F. Bierman, Student Intern, for appellee. Argument presented by Jennifer Gimbel.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

Vernon Virgilio appeals his convictions for aiding and abetting the delivery of a controlled substance and conspiracy to deliver a controlled substance.

We affirm.

Virgilio brings the following issues:

ISSUE I

Whether the appellant was convicted contrary to law where the prosecutor presented an improper basis of criminal liability and the court's instructions were ambiguous and could have been interpreted by the jury to mean that mere knowledge of the criminal act was sufficient for a conviction?

ISSUE II

Whether the appellant was improperly denied instructions on his theory of the case, *i.e.*, mere presence with knowledge was insufficient to convict?

ISSUE III

Whether the trial court erred in overruling appellant's objection to the admissability of testimony relating to appellant's prior bad acts?

In July 1989, agents from the Wyoming Department of Criminal Investigation (DCI) were investigating the sale of LSD in the Casper area. Using an informant, the DCI agents arranged a purchase of the drug from Brooke Snyder through James Bryan. In the afternoon of July 17, Bryan purchased 50 "hits" of LSD for the agents from Snyder. The agents told Bryan they wished to purchase more and arranged to meet him later that day at a convenience store parking lot.

At the store parking lot, Bryan was sitting in the passenger seat of appellant Virgilio's vehicle. The agents followed the vehicle to an apartment where Bryan introduced Virgilio to the agents. In Virgilio's presence, Bryan and the agents discussed purchasing LSD. Virgilio offered to drive Bryan to where the LSD was available because he said he wanted to get some LSD for himself.

One of the agents told Virgilio not to drive very fast so the agent could follow him. They also arranged to meet at a car wash if the agents lost Virgilio and Bryan. After meeting at the car wash, Virgilio and Bryan left to arrange for the purchase. They returned to report to the agent that Brooke Snyder would sell 26 "hits" of LSD for $3.50 each. That would have totalled $91.00, but Virgilio suggested the agents give them $90.00 to keep things simple. The money was handed to the appellant, Virgilio, who handed it to Bryan. Virgilio told the agents to stay at the car wash until he and Bryan returned.

Concerned that Virgilio and Bryan might drive off with the money or with the drugs after using their money to purchase them, the agents drove to an area near Brooke Snyder's residence to observe the transaction. Virgilio and Bryan left the residence and saw the agents. Virgilio told the agents that it was not safe where they were and to meet at the car wash. The drugs were delivered to the agents at the car wash.

Virgilio was charged with delivery of a controlled substance and conspiracy to deliver a controlled substance, pursuant to W.S. 35–7–1014(d)(xii), 35–7–1031 and 35–7–1042, on September 6, 1989. He was found guilty of aiding and abetting the delivery of a controlled substance and conspiracy to deliver a controlled substance on May 9, 1990. He was subsequently sentenced to four to six years in the penitentiary.

█ In his first issue, appellant contends that a combination of the State's closing argument and the jury instructions concerning the law relating to an aiding and abetting conviction resulted in error. We

find no error in the argument, the instructions, or a combination of the two.

■■■ To determine the propriety of a closing argument, we examine it in its entirety. *Hopkinson v. State,* 632 P.2d 79, 166 (Wyo.1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). The purpose of closing argument is to allow counsel to offer ways of viewing the significance of the evidence. *Wheeler v. State,* 691 P.2d 599, 605 (Wyo.1984). The scope of permissible argument by counsel to the jury is within the discretion of the trial court and will not be disturbed absent a clear or patent abuse of discretion. *Mayer v. State,* 618 P.2d 127, 132 (Wyo.1980). The court should allow a wide latitude of comment on the evidence. *State v. Spears,* 76 Wyo. 82, 300 P.2d 551, 561 (1956).

■■■ To convict a person of aiding and abetting the commission of a substantive offense, it must be proven that the crime in question was committed by someone and that the person charged as an aider and abettor associated himself with and participated in the accomplishment and success of the criminal venture. *Tompkins v. State,* 705 P.2d 836, 840 (Wyo.1985), *cert. denied,* 475 U.S. 1052, 106 S.Ct. 1277, 89 L.Ed.2d 585 (1986). Appellant does not contest that the substantive crime was committed. Instead, he contends that the State's closing ignored the other elements necessary for an aiding and abetting conviction.

Appellant focuses on statements made by the State concerning appellant's knowledge of the drug transaction that transpired. He contends that the closing argument focused on knowledge instead of criminal intent. Reading the State's argument, however, in its entirety, we find the State's argument did not rely on whether appellant knew that a drug transaction was transpiring. Throughout the State's argument are references to actions appellant took to further the drug transaction. The argument details the conversations between the DCI agents, Bryan and appellant, appellant's driving Bryan to get the drugs, and appellant's calculating the sale price of the LSD. We find the State's

argument was not as characterized by appellant. The argument was proper comment upon the evidence.

Appellant dovetails his argument concerning the State's closing by contending that the argument caused jurors to misunderstand their instructions. He argues that the instructions do not define "criminal intent," and the State's argument suggests that knowledge is equal to criminal intent. We have already discussed and rejected the contention that the State's argument was misleading. Furthermore, the instructions do define "criminal intent." Instruction 7, which is based on Wyoming Pattern Jury Instruction—Criminal 3.203, states:

> **To be an accessory before the fact, a person must intend that his acts or words secure the commission of the crime.** Merely assenting to or assisting in the commission of the felony without knowledge that a crime is going to be committed, or that the defendant's actions are going to aid in the commission of the felony, is not criminal. [Emphasis added]

The instruction defines concisely "criminal intent." *See United States v. Smith,* 838 F.2d 436, 441 (10th Cir.1988), *cert. denied,* 490 U.S. 1036, 109 S.Ct. 1935, 104 L.Ed.2d 407 (1989) and *Black's Law Dictionary* 336 (5th Ed.1979). We find no error in the instructions by themselves or in combination with the State's closing argument.

■■■ In his second issue, appellant contends that the court erroneously refused the following two instructions:

### DEFENDANT INSTRUCTION "D"

Evidence, though demonstrating Defendant's proximity to an illegal substance and to a person who did have control over the illegal substance, is insufficient to sustain a conviction where it did not establish any type of working relationship between the parties regarding the illegal substance, but merely an association.

### DEFENDANT INSTRUCTION "C"

Mere proximity to an illegal substance, mere presence on the property where the illegal substance is located or mere association, without more, with the person who does have control of the illegal substance or the property on which it is found is insufficient to convict the Defendant.

■ The trial court has a duty to give defendant's instruction presenting his theory of defense if the instruction is supported by competent evidence. *Stapleman v. State*, 680 P.2d 73, 75 (Wyo.1984). However, the court may refuse an instruction which is argumentative or unduly emphasizes one aspect of the law. *Prime v. State*, 767 P.2d 149, 154 (Wyo.1989). A court may refuse an instruction if the concept is covered by other instructions. *Griffin v. State*, 749 P.2d 246, 256 (Wyo.1988).

Both of defendant's offered instructions concerned the effect and proximity to the alleged substance as affecting the type of relationship between an accessory and the principal. They both were more argument than law and unduly emphasized the effect of proximity to an illegal substance or to the principal as sufficient to convict an accessory to a crime. The law was adequately covered in other instructions including Instruction 4, which stated:

The necessary elements of the crime of accessory before the fact to the felony charge are:

1. The crime occurred within the County of Natrona on or about the date of July 17, 1989; and

2. Delivery of a controlled substance was committed by someone as a principal; and

3. The Defendant did aid and abet in the commission of that offense or did counsel, hire, command or procure the commission thereof, the elements of which are set forth in another instruction.

If you find from your consideration of all of the evidence that each of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

If, on the other hand, you find from your consideration of all of the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty[;]

Instruction 6, which stated:

A person aids and abets the commission of a crime if he knowingly and with criminal intent aids, promotes, encourages, or instigates the commission by act or advice[;]

and Instruction 7, *supra*. These instructions left room for the argument appellant could present to the jury but sought to present in his two offered and refused instructions. The court did not err in refusing the two offered instructions.

■ In his final issue appellant objects to testimony by a Casper police officer and a DCI agent concerning his prior drug involvement. The DCI agent testified that in 1987 he purchased marijuana from appellant. The Casper police officer testified that he purchased marijuana from appellant in 1985. The court overruled objections to the testimony.

W.R.E. 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ The principal test of admissibility under Rule 404(b) is whether or not it tends directly or through inference to prove or disprove a consequential fact such as intent or knowledge. *Grabill v. State*, 621 P.2d 802, 808 (Wyo.1980). Appellant's defense of the case was that he did not know until it was too late that a drug transaction was in progress and that after he learned what was transpiring he never formed the requisite intent necessary for him to be guilty of aiding and abetting the offense. One allowable means to show knowledge and intent is to present evidence of a defendant's involvement in other drug transactions.

*United States v. Rubio–Estrada,* 857 F.2d 845, 847 (1st Cir.1988); *United States v. Wixom,* 529 F.2d 217, 220 (8th Cir.1976). As appellant's knowledge and intent were at issue in this case, the evidence was properly admitted.

Affirmed.

URBIGKIT, Chief Justice, dissenting.

Almost inextricably in our recent decisions, two results appear pervasively considered and frequently applied: bad acts evidence under W.R.E. 404(b) is justified within the circumstance of the case by some application and the evidence presented by the defense seems somehow insufficient to justify a theory of the defense instruction for the accused to litigatively submit his or her case to the jury for acquittal.

This decision confines both results in a rather stark circumstance. This court rejects the theory of defense instruction and then accepts introduction of the bad acts evidence by justification of the defendant's theory of defense for which an instruction to outline the theory for the jury was then rejected. The bad acts are admissible to offset a theory of defense which cannot be described in instructions to the jury. Somehow that just does not seem right to me.

In first concept, it is my persuasion that we demean the intelligence of the jury in denial of a theory of defense instruction. If we make our own appellate fact finding to ascertain that the evidentiary justification is so minimal, then why are we so concerned about permitting the jury to realistically determine the case based on the presentation provided by the defendant? If theory of defense looks weak in fact finding exercise by the appellate court, it should look weak in review by the anticipated intelligent jury. *Dice v. State,* 825 P.2d 379 (Wyo.1992); *McInturff v. State,* 808 P.2d 190 (Wyo.1991); *Oien v. State,* 797 P.2d 544 (Wyo.1990). *Cf. Ramos v. State,* 806 P.2d 822 (Wyo.1991) and *Thom v. State,* 792 P.2d 192 (Wyo.1990). In structure and decision with failure of the trial court to instruct the jury on the theory of the defendant's case, this appeal presents the almost identical issue found in *Bouwkamp v. State,* 833 P.2d 486 (Wyo. 1992).

Furthermore, it has been the concept for this court to almost entirely swallow the admissibility of bad acts evidence sugarcoated by the uniform analysis that there is always an exception to the generally stated non-admissibility rule appropriate to justify introduction of the extraneous information to be used for the jury in a determination of present guilt. My sense of fairness and standard of propriety is mathematically quadrupled where first a reasonable theory of defense instruction is denied and then bad acts evidence is introduced as if the instruction would be given. W.R.E. 404(b) evidence seems to appear in nearly every criminal appeal.[1]

The case law is legion in nearly any jurisdiction that a theory of defense instruction should be given if supported by any credible evidence which can include solely the testimony of the defendant. *Oien,* 797 P.2d 544.[2] This court has consistently stated the rule in both principled and constitutional terms that the defen-

---

1. See, for example, *Pearson v. State,* 811 P.2d 704 (Wyo.1991), Urbigkit, J., dissenting; *Eatherton v. State,* 810 P.2d 93 (Wyo.1991), Urbigkit, J., dissenting; *Ramos,* 806 P.2d 822; *Longfellow v. State,* 803 P.2d 848 (Wyo.1990); *Pena v. State,* 792 P.2d 1352 (Wyo.1990); *Gale v. State,* 792 P.2d 570 (Wyo.1990), Urbigkit, J., dissenting; *Tennant v. State,* 786 P.2d 339 (Wyo.1990); *Miller v. State,* 784 P.2d 209 (Wyo.1989); *Martin v. State,* 780 P.2d 1354 (Wyo.1989); *Gezzi v. State,* 780 P.2d 972 (Wyo.1989), Urbigkit, J., dissenting; *King v. State,* 780 P.2d 943 (Wyo.1989); *Pena v. State,* 780 P.2d 316 (Wyo.1989); *Garcia v. State,* 777 P.2d 1091 (Wyo.1989); *Justice v. State,* 775 P.2d 1002 (Wyo.1989); *Campbell v.*

*State,* 772 P.2d 543 (Wyo.1989); *Dorador v. State,* 768 P.2d 1049 (Wyo.1989); *Schwenke v. State,* 768 P.2d 1031 (Wyo.1989); and *Brown v. State,* 736 P.2d 1110 (Wyo.1987), Urbigkit, J., dissenting. Compare, however, where evidence adverse to the state's witnesses regarding "bad acts" was not admissible: *Johnson v. State,* 806 P.2d 1282 (Wyo.1991), Urbigkit, J., dissenting, and *Ramos,* 806 P.2d 822, Urbigkit, J., dissenting.

2. For a sequential list of theory of defense cases, see *Bouwkamp,* 833 P.2d 486.

dant, in order to provide an opportunity for a proper defense, is entitled to his theory of the defense instruction. However, the results are almost as consistent in recent appeals where the denial of a theory of defense instruction is now justified by extended effort to find a basis for that denial of either the theory of defense instruction was not factually sustained or was inadvisably phrased for usage. *Thom,* 792 P.2d 192; *Smith v. State,* 773 P.2d 139 (Wyo. 1989); *Miller v. State,* 755 P.2d 855 (Wyo. 1988); *Best v. State,* 736 P.2d 739 (Wyo. 1987); *Noetzelmann v. State,* 721 P.2d 579 (Wyo.1986). *Cf. Dice,* 825 P.2d 379.[3]

I will continue to dissent until the trial bench, trial counsel and this court enforce a fundamental principle that the defendant should be granted the opportunity to have the jury assess guilt upon rejection of the defendant's perspective of why an acquittal could be justified. I will not be so dogmatic about the continuum of bad acts evidence inevitably introduced and almost universally approved by this tribunal, except to continue to raise a small voice from a more than 400–year history of our system of law that guilt should be determined on facts of the incident and not based upon rumor, reputation or conviction by prejudice extracted from the defendant's asserted bad acts history and reputation.

This is a case where a crime was committed with the principal actor in commission being someone other than this appellant, Vernon Virgilio. However, this appellant got netted in the drug arrests, whether guilty or innocent. Factually and actually, Virgilio was either innocent of a crime, he was close enough to the action to be properly responsible for aiding and abetting, or, in fact, he could have been a principal in the crime involving delivery of a controlled substance. The difficulty in this case, created by the improvidence of instructions and the overlay of his past history, is that the jury did not decide the case within well-defined rules of law using evidence of guilt

produced by trial testimony. The guilty verdict was decided because of his previous history of involvement with drugs and the denial of a proper instruction stating his theory of defense. Whether Virgilio was guilty, somewhat guilty or realistically innocent, he did not receive a fair trial and, consequently, I dissent.

Obviously, from the evidence presented, Virgilio, who was not a principal target in the investigation, was found to be "standing around" when a drug deal went down and the proper question suitably instructed should have been whether he committed a crime in conjunction with those persons about whose actions the investigation had been directed and who were then found to be involved in the illegal conduct during the investigative process. Since his theory of defense instruction of non-involvement was denied and the instructions which were given were confusing and ambiguous, the principal element of conviction became his asserted bad acts conduct, undesirable reputation and the fact that he was available to have been a participant—whether he was or was not.

Starting with the principle established in American law, except when unobserved in some recent adjustments for Wyoming law, that a defendant is entitled to a properly phrased theory of defense instruction if there is some evidence to support that theory, *Dice,* 825 P.2d 379; *Stevenson v. United States,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896), we then come to the rule equally recognized in a multitude of cases that "mere presence" is insufficient to justify an accessory before the fact, principal or aiding and abetting criminal conviction. With those unquestionable rules resolved, I search in this case to find justification factually and procedurally to sustain conviction. Essentially, there was a clean theory of defense instruction denied and the cloudy instructional process actually used permitting presentation of evidence and usage

---

**3.** In addition to *Dice* and *Oien,* recent cases where the consistent rule was recognized include *McInturff,* 808 P.2d 190 and *Ramos,* 806 P.2d 822. See the basic law in *Stevenson v. United States,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896). A list of cases is included in *Oien,* 797 P.2d at 546 n. 4 and an extended listing and discussion is provided in the *Bouwkamp* dissent.

in final argument was that "he was there so he must have been guilty." The key to the prosecution was "Mr. Virgilio and Mr. Bryan [were] both present," as stated in closing argument by the prosecutor. *United States v. Bryant*, 461 F.2d 912, 921 (6th Cir.1972).

It was the stated defense of Virgilio, although denied for submission to the jury, that he did not instigate the deal, had no part in promoting the deal, received no benefit from the deal and was not a functioning participant to make the deal occur. Why then was he denied the well-established, generally used theory of defense instruction? It surely cannot be at this stage with the parade of references having been made in our cases to the constituent constitutional right that a theory of defense instruction is not available. It is just as obvious that he was denied any theory of defense instruction stating his litigative concept. It sometimes seems and is suggested in this majority opinion that the theory of defense instruction is totally misunderstood. The affirmative theory of defense instruction is simply not the same as a general instruction that the state has the duty to prove the elements of the offense beyond a reasonable doubt. The majority recites the elements of the accessory before the fact charge, the elements of aiding and abetting and then states: "These instructions left room for the argument appellant could present to the jury but sought to present in his two offered and refused instructions. The court did not err in refusing the two offered instructions." Maj. op. at 1128. Something is missed in understanding and something was missed in the jury instructions consequently given. Simplistically, what the majority has said is that Virgilio was not entitled to a theory of defense instruction of any kind. For a comparison, see how the trial court properly instructed the jury in *Dice*, 825 P.2d 379 regarding the theory of defense.

Virgilio asked as his mere presence instructions:

### Defendant Instruction "C"

Mere proximity to an illegal substance, mere presence on the property where the illegal substance is located or mere association, without more, with the person who does have control of the illegal substance or the property on which it is found is insufficient to convict the defendant.

### Defendant Instruction "D"

Evidence, though demonstrating defendant's proximity to an illegal substance and to a person who did have control over the illegal substance, is insufficient to sustain a conviction where it did not establish any type of working relationship between the parties regarding the illegal substance, but merely an association.

No mere presence instruction was given, although it is the universal rule of law applicable to these kinds of cases. The majority's justification for denial apparently is that it "unduly emphasized the effect of proximity * * *." Maj. op. at 1128. That is what a theory of defense instruction is intended to do. It states the position of the litigant for the jury to compare the requirements for conviction with the contention of innocence. *See Pinkney v. United States*, 380 F.2d 882, 886 (5th Cir. 1967), *cert. denied*, 390 U.S. 908, 88 S.Ct. 831, 19 L.Ed.2d 876 (1968).

The mere presence rule is not a vacuous concept; it defines a basic principle of criminal guilt requiring knowledgeable action—activity assisting in planning and preparing for the perpetration. 21 Am.Jur.2d *Criminal Law* § 166 (1981). It is within the criteria of intent and action for the mere presence rule to determine when additional proof is lacking that guilt cannot be found. The United States Tenth Circuit Court of Appeals in *United States v. Zimmerman*, 943 F.2d 1204 (10th Cir.1991) had occasion to comprehensively analyze both the rule and principle of instruction in a case charging lawyers in a law firm with criminal bankruptcy complicity in hiding assets. The case did have an additional feature where the jury asked for further instructions regarding standing around guilt concerns. The Tenth Circuit Court of Appeals,

in finding error in failure to reinstruct during deliberations, stated:

It is well established that a person who sees a crime being committed has no legal duty to either stop it or report it. The government is incorrect in stating that such a general duty exists under Colorado law, C.R.S. § 18–8–115, or federal law, 18 U.S.C. § 4. Moreover, as the government seeks to do, a lawyer's ethical duty of good faith under the Code of Ethics, the Uniform Commercial Code or the Restatement (Second) of Contracts cannot be bootstrapped into a legal duty to act. Thus, without a duty there can be no conviction of the observer who does not actively participate in the crime by some conduct. *King v. United States*, 402 F.2d 289, 291 (10th Cir.1968); *Bratton v. United States*, 73 F.2d 795, 797–98 (10th Cir.1934). The government argues in substance that the jury could rely on the evidence without instruction on the legal consequences of the facts.

The jury should have been instructed in a way that there was no possibility that the conviction was based on an incorrect legal basis. The questions from the jury certainly pointed up the problem. *See Bollenbach [v. United States]*, 326 U.S. [607] at 612–13, 66 S.Ct. [402] at 405–06 [90 L.Ed. 350] [ (1946) ]. Absent such an instruction, "[t]he conclusion is inescapable that the jury may have convicted on an improper basis." *[United States v.] Kline*, 922 F.2d [610] at 613; *see also United States v. Munz*, 504 F.2d 1203, 1208 (10th Cir.1974); *Michaud v. United States*, 350 F.2d 131, 133 (10th Cir.1965).

\* \* \* \* \* \*

It is difficult to see how the "good faith" in the Restatement [ (Second) of Contracts] substitutes for an instruction from the court.

*Id.* at 1214. The case should equally tell us that like a duty from the Restatement (Second) of Contracts, the lack of duty from mere presence is a subject requiring instruction to the jury so they will not convict on an improper basis.

The cases are almost unnumbered in similar decisional status, but a selected segment in citation is demonstrative of the underlying principle conceptually derived in text from an opinion of Circuit Judge Learned Hand in *United States v. Peoni*, 100 F.2d 401 (2nd Cir.1938), which in varying arrangements has since been consistently applied in most state and federal jurisdictions. The opinion enunciated that the definitions of aiding and abetting or accessory

all demand that he in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed. All the words used—even the most colorless, "abet"—carry an implication of purposive attitude towards it.

*Id.* at 402. That definition was adopted by the United States Supreme Court in *Nye & Nissen v. United States*, 336 U.S. 613, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949) and remains the foundational concept of guilt requiring action and intent and consequent non-guilt from mere presence. *Peoni* was cited with approval by restated text in *Jahnke v. State*, 692 P.2d 911, 921 (Wyo. 1984) where the general rule of *Haight v. State*, 654 P.2d 1232 (Wyo.1982) was quoted and many accommodating citations from other jurisdictions were also listed.

In a nearly identical situation of drug delivery as presented by this appeal, where the verdict was reversed and remanded, the Fifth Circuit Court of Appeals in *United States v. Longoria*, 569 F.2d 422, 425 (5th Cir.1978) said:

Proof that a defendant was merely associated with a criminal, or that defendant was present at the scene of a crime is not, without more, sufficient to sustain a conviction for aiding and abetting a criminal venture. *United States v. Martinez*, [555 F.2d 1269 (5th Cir.1977) ], *supra*. To be upheld, the conviction must be based on evidence that the "defendant was associated with the criminal venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed." *United States v. Martinez, supra, United States v. An-*

*thony*, 474 F.2d 770 (5th Cir.1973). To prove association, there must be evidence to establish that the defendant "shared in the criminal intent of the principal." *United States v. Smith*, 546 F.2d 1275 (5th Cir.1977). To prove participation, there must be evidence to establish that the defendant engaged in some affirmative conduct; that is, there must be evidence that defendant committed an overt act designed to aid in the success of the venture. Proof of mere negative acquiescence will not suffice. *United States v. Martinez, supra; United States v. Smith, supra.*

Logical consideration of this appeal regarding the denied theory of defense instruction requested by Virgilio invokes a two-stage progression. *Aschliman v. State*, 589 N.E.2d 1160 (Ind.1992). The first inquiry is what is the correct rule of law regarding mere presence and the second aspect then is how will that rule be properly communicated to the jury. In recognition first of the pervasive law of the right of an accused to a theory of defense instruction, neither of these questions provide a controversial status or any kind of justification within the scope of this case to properly sustain the majority decision.

In first concept, even predating the clear recitation by Judge Hand in *Peoni*, the homicide case of *Hicks v. United States*, 150 U.S. 442, 14 S.Ct. 144, 37 L.Ed. 1137 (1893) included both questions of mere presence and improper instruction. In that case, the improper instruction required murder conviction reversal on a charge of aiding and abetting. The United States Supreme Court recognized the specific affirmative requirement for encouragement or assistance in commission of the offense in order to provide the basis for criminal guilt.

The second inquiry is proper instruction to provide relevant standards for decision by the jury. That rule is also decisively provided by another extraordinary jurist, Justice Frankfurter, for American law when in *Bollenbach v. United States*, 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946) he established:

> Discharge of the jury's responsibility for drawing appropriate conclusions from the testimony depended on discharge of the judge's responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria.

As restated in *Nye & Nissen*, 69 S.Ct. at 771, Justice Frankfurter in dissent again said, "only when a jury has been properly instructed as to the relevant standards to be applied to the evidence does a basis exist for determining whether evidence sufficient to support the verdict was presented to it."

These two principles, neither complex nor controversial, establish the proper principle of law and provide an instruction to give the jury a basis for its verdict determination.[4] Several different styles of restatement or recitation of the Judge Hand explanation in *Peoni* of the required standard for guilt are found within the federal courts, each uniformly following the *Peoni/Nye & Nissen* theme. "To aid and abet one must share in the intent to commit the offense, as well as participate in some manner to assist its commission." *United States v. Smith*, 838 F.2d 436, 441 (10th Cir.1988), *cert. denied*, 490 U.S. 1036, 109 S.Ct. 1935, 104 L.Ed.2d 407 (1989). *See also United States v. Fischel*, 686 F.2d 1082 (5th Cir.1982).[5]

---

**4.** It is interesting to note that few of the mere presence/active participation in the perpetration cases discuss jury instructions. Most reversals or considered reversals come on insufficiency of the evidence to sustain guilt. Obviously, within these cases, that is a difficult burden on appeal because an adverse jury verdict has already been rendered when the "any evidence" test to sustain is normally applied. See, for example, the sufficiency cases: *Longoria*, 569 F.2d 422; *United States v. Smith*, 546 F.2d 1275 (5th Cir.1977); and, conversely, *Zimmerman*,

943 F.2d 1204 and *King v. United States*, 402 F.2d 289 (10th Cir.1968) which consider the adequacy of instruction rather than the sufficiency of the evidence.

**5.** "Moreover, flight and false exculpatory statements standing alone will not lead to a conviction absent other independent evidence." *United States v. Abraham*, 617 F.2d 187, 191 (9th Cir.), *cert. denied* 447 U.S. 929, 100 S.Ct. 3027, 65 L.Ed.2d 1123 (1980).

When characterized in proximity and presence, the rule is stated:

> This court has held many times that association with other persons involved in a criminal enterprise is not sufficient to prove knowing participation in a conspiracy. * * * "[P]roximity to the crime does not suffice to tip the balance," and even "actual presence at the scene of the crime is not sufficient."

*United States v. Littrell*, 574 F.2d 828, 833 (5th Cir.1978) (quoting *United States v. Caro*, 569 F.2d 411, 418 (5th Cir.1978)). Proof of mere association or presence at the scene of the crime in raising a mere suspicion of guilt of the offense charged is not sufficient. *United States v. Wright*, 450 F.2d 992 (10th Cir.1971); *Lucero v. United States*, 311 F.2d 457 (10th Cir.1962), *cert. denied sub nom. Maestas v. United States*, 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767 (1963). Presence alone is not sufficient to constitute the requisite "slight evidence" of willful participation or knowledge. *United States v. Weaver*, 594 F.2d 1272 (9th Cir.1979). *Weaver* was a case involving drug delivery with a very similar factual situation to that with which we are presented in this appeal.

The court in *United States v. Carter*, 522 F.2d 666, 681 (D.C.Cir.1975) first recognized the fundamental nature and application of the *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) standard:

> "It is critical that the moral force of the common law not be diluted by a standard of proof that leaves people in doubt whether innocent men are condemned. It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty."

After application of that fundamental criteria of criminal law, the court then recited the standing around rule: "It is established, however, that the mere presence of an accused at the scene of a crime is not sufficient to establish his guilt." *Carter*,

522 F.2d at 682 (citing *Hicks*, 150 U.S. 442, 14 S.Ct. 144 and variant additional authorities).

> To be guilty of aiding and abetting a crime, the defendant must willfully associate himself with the criminal venture and seek to make it succeed through some action on his part. * * * The government must prove more than mere presence at the scene of the crime even if coupled with knowledge that the crime is being committed.

*United States v. Esparsen*, 930 F.2d 1461, 1470 (10th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992). *See also United States v. McMahon*, 562 F.2d 1192 (10th Cir.1977). Rephrased, "mere knowledge that a crime is being committed, even coupled with presence at the scene, ordinarily is not sufficient evidence upon which to base a conviction of participation in the crime." *United States v. Shapiro*, 669 F.2d 593, 595 (9th Cir.1982) (citing *Nye & Nissen*, 69 S.Ct. 766). *See also Stevens v. Johnson*, 575 F.Supp. 881 (E.D.N.C.1983). Sitting in the truck when the drug deal was consummated was also not sufficient in *Weaver*, 594 F.2d 1272.

The rule is similarly stated in the context of the affirmative burden of proof which for "aiding and abetting of a criminal offense is to show that the defendant 'willfully associated himself in some positive way with the criminal venture by showing that he has joined the enterprise as something he wishes to bring about and by seeking to make it succeed by some action on his part.'" *United States v. Zamora*, 784 F.2d 1025, 1031 (10th Cir.1986) (quoting *United States v. Taylor*, 612 F.2d 1272, 1275 (10th Cir.), *cert. denied*, 444 U.S. 1092, 100 S.Ct. 1060, 62 L.Ed.2d 782 (1980)). The case references *Nye & Nissen* as further authority. *See also United States v. Anthony*, 474 F.2d 770 (5th Cir.1973). A drug case within the same rule concept required reversal in *United States v. Jackson*, 526 F.2d 1236 (5th Cir.1976). Similarly in a well recognized drug case, although the conviction was affirmed on sufficiency of the evidence, it was stated:

> Thus, to sustain this conviction, the evidence and reasonable inferences there-

from must show that defendant knew that a narcotics distribution was occurring, that he associated himself with the act, that he participated in it with a desire that it be accomplished, and that he committed some overt act designed to make it a success. Defendant must have shared the criminal intent or purpose and assisted in the accomplishment of that purpose.

*United States v. Martinez,* 555 F.2d 1269, 1272 (5th Cir.1977). *Weaver,* 594 F.2d 1272 was similar, except the conviction was reversed and the sufficiency of the evidence was ⁚ ⁚t sustained. That court quoted *Nye & Nissen,* which quoted *Peoni,* and then stated:

> Although Weaver was present at the scene, mere presence does not make one an aider and abetter. * * * Aside from this, there was no showing that Weaver assisted the perpetrators of the crime. Nor was there a showing that Weaver shared in the criminal intent of the principals * * *.

*Weaver,* 594 F.2d at 1275.

The critically important concept is not just that lawyers and jurists know what the law may be, but also that the fact-finding jury, *United States v. Camacho,* 528 F.2d 464, 469 n. 5 (9th Cir.), *cert. denied,* 425 U.S. 995, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976), is properly instructed to understand the standard for an acquittal or a guilty verdict. Specifically, such a well phrased instruction is illustrated by *United States v. Stanchich,* 550 F.2d 1294, 1300 (2nd Cir.1977):

> "The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or the mere negative acquiescence by a defendant in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting. An aider and abettor must have some interest in the criminal venture."

*See also United States v. Sacks,* 620 F.2d 239 (10th Cir.1980) and *United States v. Horton,* 488 F.2d 374 (5th Cir.1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974) (involving a trial to the court where one conviction was reversed).

The structure of California law which is illustrative generally of state court decisions is similarly informative. In first instance, we find the right to the theory of defense instruction:

> The operative principle * * * is simply that a defendant is entitled to an instruction on any defense which is supported by substantial evidence * * * and that in determining whether such evidence exists, the trial court must not weigh the credibility of witnesses, nor focus on the fact there is a conflict in the evidence, but must resolve any doubts as to the credibility and sufficiency of the evidence in favor of the defendant.

*People v. Wu,* 235 Cal.App.3d 614, 286 Cal. Rptr. 868, 878 (1991). Within this initial perspective, the courts of California first comprehensively addressed the aiding and abetting instructional requirement and, specifically, whether it was aiding or abetting:

> We suggest that an appropriate instruction should inform the jury that a person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator, and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.

*People v. Beeman,* 35 Cal.3d 547, 199 Cal. Rptr. 60, 68–69, 674 P.2d 1318, 1326 (1984). This synthesized instruction is considered and supported by more extensive recitation from *Beeman* in the monumentally extended case of *People v. Pitts,* 223 Cal.App.3d 606, 273 Cal.Rptr. 757, 921 (1990), where it is stated and quoted:

> *People v. Beeman,* * * * sets forth the requirements for imposition of liability upon a theory of aiding and abetting:
>
> > "[T]he weight of authority and sound law require proof that an aider and abettor act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of

committing, or of encouraging or facilitating commission of, the offense. [Citations.]

"When the definition of the offense includes the intent to do some act or achieve some consequences beyond the *actus reus* of the crime [citation], the aider and abettor must share the specific intent of the perpetrator. By 'share' we mean neither that the aider and abettor must be prepared to commit the offense by his or her own act should the perpetrator fail to do so, nor that the aider and abettor must seek to share the fruits of the crime. [Citation.] Rather, an aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime. [Citations.]" (*People v. Beeman, supra*, 35 Cal.3d at p. 560, 199 Cal.Rptr. 60, 674 P.2d 1318.)

*Accord Matter of Jose T.*, 230 Cal.App.3d 1455, 282 Cal.Rptr. 75 (1991), although the evidence showed more than presence in providing evidence of willful participation and the conviction was affirmed. The California Supreme Court in *People v. Croy*, 41 Cal.3d 1, 221 Cal.Rptr. 592, 710 P.2d 392 (1985) approved the *Beeman* instruction and reversed the murder conviction involved in the case when not given.

A like principle has existed within Montana law for an extended period:

Mere presence at the time a crime is committed, without interfering, does not make one a party to a crime unless his interference was a duty by reason of some position held by him, or unless noninterference was designed by him and operated as encouragement or protection; nor does the mere concealment of knowledge that a crime is about to be committed constitute such person an accomplice (1 Wharton's Criminal Law [11th Ed.] 316 and 341), no matter how reprehensible such conduct may be * * *.

*State v. McComas*, 85 Mont. 428, 278 P. 993, 995 (1929). More than mere presence at the scene of a crime is necessary to establish criminal responsibility. *State ex rel. Murphy v. McKinnon*, 171 Mont. 120, 556 P.2d 906 (1976). *Accord State v. Nordahl*, 208 Mont. 513, 679 P.2d 241 (1984).

Current Illinois law states that "[m]ere presence does not render one accountable under the statute; there must be proof of the required intent and that defendant aided, abetted or attempted to aid another in the perpetration of the crime." *People v. Evans*, 87 Ill.2d 77, 57 Ill.Dec. 622, 429 N.E.2d 520, 522 (1981). The test is intent to promote an action to facilitate. *People v. Mason*, 211 Ill.App.3d 787, 156 Ill.Dec. 166, 570 N.E.2d 642 (1991), which followed *Evans* and cited *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068. *See also People v. Hammond*, 214 Ill.App.3d 125, 157 Ill.Dec. 907, 573 N.E.2d 325 (1991) which reversed for an inappropriate instruction and is not totally dissimilar from the erroneous instruction given to the jury in this case.

The general principle that mere presence at the scene of a crime without more does not make an accused a party to the crime is recognized in *Beggs v. State*, 568 So.2d 377 (Ala.Cr.App.1990) and earlier in *Hudson v. State*, 249 Ala. 372, 31 So.2d 774 (1947), where presence in the vicinity of a moonshine still was not sufficient to warrant conviction. *Accord Radke v. State*, 52 Ala. App. 397, 293 So.2d 312 (1973), *aff'd* 292 Ala. 290, 293 So.2d 314 (1974); *Wilson v. State*, 319 Md. 530, 573 A.2d 831 (1990); *Com. v. Costa*, 407 Mass. 216, 552 N.E.2d 106 (1990); *Com. v. Whitehead*, 379 Mass. 640, 400 N.E.2d 821 (1980); and *People v. Christopher*, 161 A.D.2d 896, 557 N.Y.S.2d 461 (1990) (which also addressed community of purpose).

Nebraska case law follows the Montana rule and statement that "evidence of mere presence, acquiescence, or silence is not enough to sustain the State's burden of proving a defendant guilty [of aiding and abetting]." *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610, 636 (1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 216, 112 L.Ed.2d 176 (1990). That rule is similarly

stated in *Mares v. State,* 801 S.W.2d 121 (Tex.App.1990) and *James v. State,* 144 Tex.Crim. 126, 161 S.W.2d 285 (1942).

We have in this case a proper instruction denied, an improper instruction given and a principle ignored:

> The trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge. * * * Having presented some evidence on his sole defense, he was entitled to the jury instruction * * *.

*Tarvestad v. State,* 261 Ga. 605, 409 S.E.2d 513, 514 (1991). Here, as in the quoted Georgia case, the instructions "as a whole failed to fairly present [Virgilio's mere presence] defense to the jury." *Id.* at 515. *The mere presence—non-guilt—principle is just very simply a settled universally accepted rule of law, except perhaps now in Wyoming.*

I could reword the instruction into somewhat better phraseology, but that was not the decision made by the trial court nor now affirmed here. What appears here to have been determined is that Virgilio, for some unstated reason, was not entitled to a theory of defense instruction to assert this absolutely determined principle of law. Simply stated, and it cannot be said otherwise, Virgilio was denied his theory of defense instruction. There is no justification for the denial and, overtly, that denial cannot be said to be harmless error.

By virtue of the number of the theory of defense instruction problems, I am lead to try to establish some justified basis for this departure from fundamental criminal (and civil) legal principles and consequently determine what this court really means in repetition that a theory of defense instruction should be given and then denies its appropriateness. This case and some of our other recent cases of like kind suggest the syllogism:

1. It is accepted in the law that the defendant is entitled to his theory of defense instruction if there is any evidence adduced to support the theory. This right is a basic ingredient, constitutional in na-

ture, and guaranteed as a constituent of opportunity to defend.

2. It is equally well established as a principle of law uniformly applied that presence alone at the scene of the crime without evidence to demonstrate involvement is insufficient to justify conviction of aiding and abetting.

3. The defendant's evidence and trial strategy in this case was directed to a defense that fit specifically within those two principles.

4. Upon appropriate request, the trial court refused in this case to give a theory of defense instruction.

5. That decision can be justified as a matter of law in this case only if one of the following applies, none of which are actually considered or used in justification for the illogical and inconsistent result presented:

> (a) for some reason it is determined that the defendant is not entitled to the theory of defense instruction; perhaps within the factual situation, the theory of defense would not constitute a defense in fact;

> (b) no evidence was presented to justify that defense in this case even though the rule is well established that the evidence to justify a theory of the defense can be supported sufficiently by the sole evidence provided by the testimony of the defendant, which it was here; or

> (c) the defendant, having the duty to furnish an appropriately stated theory of defense instruction, may be foreclosed from use because the instruction is argumentatively phrased in that although textually accurate, it is fact specific to the events of this case.

There is something about the syllogism and the conjectural three factors, never actually discussed, which demonstrate circular reasoning with an achieved result denying due process or any real right of the accused to actually defend.

There is another supposition which does develop as a mutation found only in comments in some Wyoming cases which is, as again suggested here, that the theory of defense instruction is appropriately unavailable because the defendant has a right

to present his argument in closing. That suggestion lacks reason, constitutional validity and any support in case law precedent. *See Bouwkamp,* 833 P.2d 486. Urbigkit, C.J., dissenting. *Cf. State v. Weller,* 590 So.2d 923 (Fla.1991) and *Frasier v. State,* 410 S.E.2d 572 (S.C.1991).

Without question of fact in this case, Virgilio's evidence and trial strategy was directed to a defense that utilized principles of law enunciated in his proposed and rejected instruction. He wanted the jury to know the general principle of law that just because he was there, he could not be convicted on that basis alone. Since he had an acceptable defense and it fit within his concept of the facts, the trial court's rejection and this majority's decision can only be justified if (a) another theory of defense instruction of equivalent substance was given, or (b) there was no evidence to support the instruction.

I could understand with disagreement a concept here to justify affirming the conviction that the proposed instructions were unartful and that Virgilio waived a proper instruction to which he otherwise would have been entitled by failure to present a proper instruction. Consequently, we could phrase this case in terms for appellate confirmation as an ineffectiveness of counsel resolution. I would not agree, but it would make rational sense. The disposition that is made does not.

The case as structured for defense on presence but not participation is then further removed from proof of guilt for conviction following denial of the theory of defense instruction by application of bad conduct and reputation evidence relating to the prior criminal history of Virgilio. This is the prosecutorial usage of W.R.E. 404(b) parade of dirty wash approach presently authenticated, preclusively achieving conviction by dominating evidence of bad repu-

tation and prior misconduct. The phraseology of the instructions which were given in conjunction with the use of the overlay of bad evidence, evil reputation characterizations and the denial of the proper theory of defense instruction combined to provide essentially a court-directed guilty verdict.

An example of the bad acts evidence is found in the testimony at trial of a witness whose purpose was not to prove that Virgilio had been guilty of a prior controlled substance offense, but rather to illuminate the details to use prior history to prove present guilt. The witness, a special investigator for the Wyoming Division of Criminal Investigation, testified about the 1987 occurrence in full detail as if it were the criminal offense presently presented for determination of guilt.[6] He obviously was appropriately primed with a prosecutorial evidentiary harpoon. *Langley v. State,* 813 P.2d 526 (Okl.Cr.1991). He added to evidence of the crime for which the 1987 conviction was achieved further evidence of an uncharged offense of burglary and thievery of the controlled substance from another individual. The witness had no knowledge of any event which was presently before the trial court as a circumstance of the present charge. Another witness was called to separately testify about 1985 events involving marijuana. In essence, two prior crimes were retried in detail with evidentiary harpoons added to provide persuasion of present guilt. Proof of a prior conspiracy was achieved by providing evidence of crimes previously committed and for which appropriate sentences had been entered and served.

The problems in this case with denied theory of defense instruction and the usage of bad acts evidence as the principal evidence of guilt are, as claimed by Virgilio, even more exacerbated by the inadequacy of the instructions that were given to de-

---

**6.** Q. As a result of your investigation do you know where Mr. Virgilio and Mr. Howell obtained that marijuana?
 A. Yes.
 Q. Where was that?
 A. On that same date they had burglarized a house that was owned or at least occupied by a Rick, I will have to think of the last

name, Rickie Hendricks. They entered that house, knew that Rickie had marijuana in that house and had stolen a quarter pound of marijuana out of that house.
 Q. As a result of those actions was Mr. Virgilio convicted of delivery of a controlled substance?
 A. Yes, he was.

fine the elements of the charged offense. In appellate brief, Virgilio states:

Specifically, jury instruction number seven (7) is particularly ambiguous. It provides:

To be an accessory before the fact, a person must intend that his acts or words secure the commission of a crime. *Merely assenting to or assisting in the commission without knowledge that a crime is going to be committed, or that the defendant's actions are going to aid in the commission of the felony, is not criminal.* (emphasis added).

* * * This instruction follows the Wyoming Pattern Jury Instructions with respect to aiding and abetting. Far from being informative, the instruction is confusing if not inaccurate. As already mentioned, mere knowledge and acquiescence in the criminal activity does not rise to the level of criminal liability contemplated in the law. Yet the instruction implies that mere assent, *without knowledge,* is not criminal. By applying simple deductive logic, a jury could have believed that mere assent, *with knowledge,* is indeed criminal. This is clearly inaccurate and inconsistent with the law. Criminal intent, or evil motive, is required, not merely knowledge of the criminal activity. Instruction seven, to be an accurate interpretation of the law, should have read something like this: mere assent, *even with knowledge,* is not criminal. In a law review comment discussing this very problem, the author recommended the following instruction: "Even if you find that the defendant was practically certain that his conduct would facilitate the crime charged, you may not, from that fact alone, infer that he intended that the crime be committed, but it is a fact which you may consider in attempting to determine the defendant's intention." Comment, *Jury Instructions in Aiding and Abetting Cases,* 1968, 68 Col.L.Rev. 774.

Furthermore, several important legal terms were left undefined in the instructions. Instruction number six (6) reads, "[a] person aids and abets the commission of a crime if he knowingly and with *criminal intent* aids, promotes, encourages, or instigates the commission by act or advice" (emphasis added). * * * Reasonable jurors could interpret the meaning of criminal intent differently. Some might reasonably believe that guilty knowledge is what is meant, when in fact evil motive is required.

The last part of Instruction Ten (10) provides, "[i]t is necessary, however, to prove beyond a reasonable doubt that a defendant was aware of the common purpose and was a *willing participant* in the conspiracy.["] (emphasis added). * * * The "willing participant" terminology is again ambiguous and fails to inform the jury that what is actually required by law is that the defendant must have been a willing participant and have criminal intent before finding him guilty.

In an effort to apprise the jury of what is not criminal activity, the defense submitted two "mere presence" instructions for the purpose of making the distinction between "mere knowledge" and "criminal intent". *Haight [v. State], supra* [654 P.2d 1232] at 1238 [ (Wyo.1982) ]. Both of these instructions were denied by the trial court. * * * Not having the benefit of these instructions, the jury could very well have determined Mr. Vi[r]gilio's guilt because he witnessed or observed criminal activity undertaken by Mr. Bryan, and not because of his criminal intent, which the law requires.

In sum, Mr. Virgilio's argument on appeal goes to the minimum standard on which to convict. The law requires not only knowledge of criminal activity, but also specific criminal intent. The jury in the case below, influenced by the prosecution's "knowledge alone" theory, coupled with vague jury instructions, and without the benefit of "mere presence" instructions, could have arrived at the result they did by basing their collective decision on evidence of Mr. Virgilio's knowledge rather than intent.

(Emphasis in original.)

The evidence of guilt in the case was not exactly fanciful and the result may well

have been identical if the clearly appropriate theory of defense instruction had been given, if that defense had been correlated to proper instructions to be given, and if less reliance on bad acts evidence to convict had been required. None of these are, however, the facts portrayed procedurally in this appellate record. Virgilio was neither given access to his constitutional right to properly defend nor was he offered due process by proper application of determined principles of law in what was done to secure his conviction.

Consequently, I dissent.